# WILLIAM KNIGHT *v.* F. L. ROBERTS AND COMPANY, INC., ET AL.
## (SC 15438)

Borden, Norcott, Katz, Palmer and McDonald, Js.

Argued January 17—officially released July 1, 1997

*Kenneth G. Williams*, with whom was *Eileen McCarthy Geel*, for the appellant (plaintiff).

*Dean M. Cordiano*, with whom were *Matthew J. Becker* and, on the brief, *Louis A. Ricciuti, Jr.*, for the appellees (named defendant et al.).

*David R. Schaefer*, with whom was *Brian P. Daniels*, for the appellee (defendant Dairy Mart, Inc.).

*Opinion*

PALMER, J. The plaintiff, William Knight, who conducts business as Knight's Service Station, appeals[1] from the judgment of the trial court striking his claims against the defendants, F. L. Roberts and Company, Inc., B. P. Exploration and Oil, Inc., and Dairy Mart, Inc., for reimbursement of alleged remediation costs under General Statutes § 22a-452 (a).[2] We conclude that

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

[2] General Statutes § 22a-452 provides: "Reimbursement for containment or removal costs. Liability for certain acts or omissions. (a) Any person, firm, corporation or municipality which contains or removes or otherwise mitigates the effects of oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes resulting from any discharge, spillage, uncontrolled loss, seepage or filtration of such substance or material or waste shall be entitled to reimbursement from any person, firm or corporation for the reasonable costs expended for such containment, removal, or mitigation, if such oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes pollution or contamination or other emergency resulted from the negligence or other actions of such person, firm or corporation. When such pollution or contamination or emergency results from the joint negligence or other actions of two or more persons, firms or corporations, each shall be liable to the others for a pro rata share of the costs of containing, and removing or otherwise mitigating the effects of the same and for all damage caused thereby.

"(b) No person, firm or corporation which renders assistance or advice in mitigating or attempting to mitigate the effects of an actual or threatened

the trial court improperly granted the defendants' motions to strike and, therefore, reverse the judgment of the trial court.

In his revised complaint, the plaintiff alleged the following relevant facts.[3] Prior to the commencement of this action, the Connecticut Light and Power Company (CL&P) instituted an action against the plaintiff seeking damages for the contamination of water and soil on its property on Main Street in the town of Windham caused by leaking gasoline.[4] In February, 1995, the plaintiff settled that action by paying CL&P $400,000 "toward the cost of containing and removing and otherwise mitigating the effects of fuel, gasoline, petroleum and chemical liquids on [CL&P's property]."[5] The plaintiff further

discharge of oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous materials, other than a discharge of oil as defined in section 22a-457b, to the surface waters of the state, or which assists in preventing, cleaning-up or disposing of any such discharge shall be held liable, notwithstanding any other provision of law, for civil damages as a result of any act or omission by him in rendering such assistance or advice, except acts or omissions amounting to gross negligence or wilful or wanton misconduct, unless he is compensated for such assistance or advice for more than actual expenses. For the purpose of this subsection, 'discharge' means spillage, uncontrolled loss, seepage or filtration and 'hazardous materials' means any material or substance designated as such by any state or federal law or regulation.

"(c) The immunity provided in this section shall not apply to (1) any person, firm or corporation responsible for such discharge, or under a duty to mitigate the effects of such discharge, (2) any agency or instrumentality of such person, firm or corporation or (3) negligence in the operation of a motor vehicle."

[3] Because its function is to test the legal sufficiency of a pleading, a motion to strike admits all facts well pleaded. *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 232, 680 A.2d 127 (1996); see also Practice Book § 152.

[4] *Connecticut Light & Power Co.* v. *Knight*, Superior Court, judicial district of Windham at Putnam, Docket No. CV870033646S (February 27, 1995). The plaintiff, who was the sole defendant in the action by CL&P, sought to implead the defendants in this case into that action. For reasons that are not germane to this appeal, however, he was unsuccessful in doing so.

[5] CL&P commenced its action against the plaintiff in 1987. The parties, however, did not settle that case until 1995, when the plaintiff paid $400,000 to CL&P, and CL&P withdrew its action.

alleged that this contamination had resulted, at least in part, from the defendants' negligent maintenance and supervision of their respective underground gasoline storage tanks.[6] On the basis of these allegations, the plaintiff sought reimbursement from the defendants under § 22a-452 (a) for their pro rata share of the $400,000 that the plaintiff had paid to CL&P.

The defendants moved to strike the plaintiff's claim for reimbursement under § 22a-452 (a). The trial court concluded that "the phrase 'mitigates the effects' of gasoline seepage pollution [contained in § 22a-452 (a)] . . . refer[s] to the physical amelioration of the despoliation rather than the palliation of economic claims by the landowner injured by the offensive discharge. [CL&P] may never use the sums paid by the plaintiff to clean up the pollution damage [but, rather] may simply treat the $400,000 as compensation for the devaluation, in whole or part, of the value of its land without taking further action to remedy the condition caused by the pollution." The trial court further held that "the right to compensation under § 22a-452 [arises] only when sums are actually spent by the claimant *directly* to correct the damage caused [by] the chemical effluent." (Emphasis added.) Because the complaint "fail[ed] to allege that the plaintiff [had] *directly* engaged in containment, removal, or mitigation efforts," the trial court granted the defendants' motions to strike and rendered judgment for the defendants.[7] (Emphasis added.)

---

[6] The complaint also alleged that each of the defendants was engaged in the sale of gasoline to the public and maintained business premises at the junction of Routes 6 and 32 in Windham.

[7] The complaint originally contained common-law indemnification claims. The plaintiff, however, withdrew those claims and, therefore, they are not the subject of this appeal.

The plaintiff also seeks attorney's fees and costs incurred by him in his defense and settlement of the action brought against him by CL&P. On appeal, the plaintiff suggests that we may want to decide whether the defendants, if they ultimately are found liable for a pro rata share of the cost of remediating CL&P's property, also may be required to reimburse the plaintiff

On appeal, the plaintiff claims that the trial court improperly determined that the complaint fails to state a claim for reimbursement under § 22a-452 (a). In particular, the plaintiff challenges the two primary conclusions underlying the trial court's decision granting the defendants' motions to strike: first, that the complaint contains no allegation that the funds paid to CL&P by the plaintiff have been used by CL&P to pay for the containment, removal, or other mitigation efforts undertaken to remediate the contamination of its property; and second, that a right to reimbursement under § 22a-452 (a) arises only when "sums are actually spent by the [party seeking such reimbursement] *directly* to correct the damage caused [by] the chemical effluent." (Emphasis added.) We agree with the plaintiff that the trial court improperly granted the defendants' motions to strike.

Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling on the defendants' motions is plenary. See *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 232–33, 680 A.2d 127 (1996). "In an appeal from a judgment granting a motion to strike, we operate in accordance with well established principles. We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency." *Bohan* v. *Last*, 236 Conn. 670, 674, 674 A.2d 839 (1996); see also *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 108–109, 491 A.2d 368 (1985). Thus, "[i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." *Waters* v. *Autuori*, 236 Conn. 820, 826, 676 A.2d 357 (1996). Moreover, we note that " '[w]hat is necessarily implied [in an allega-

for his attorney's fees and costs. Because we need not decide this question, we decline to do so.

tion] need not be expressly alleged.' " *Clohessy* v. *Bachelor*, 237 Conn. 31, 33 n.4, 675 A.2d 852 (1996).

In light of these principles, we must assume as true the plaintiff's allegations that the defendants were at least partially responsible for the contamination of CL&P's property. We also must assume that the plaintiff settled CL&P's action against him by making a $400,000 payment to CL&P. Furthermore, we note that the complaint expressly alleged that the plaintiff had "paid $400,000 to [CL&P] *toward the cost of* containing and removing and otherwise mitigating the effects of fuel, gasoline, petroleum and chemical liquids on the property of [CL&P]." (Emphasis added.) Thus, contrary to the trial court's conclusion that "[CL&P] may never use the sums paid by the plaintiff to clean up the pollution damage," we must assume that CL&P has, in fact, used those funds to defray the costs associated with containing, removing or otherwise mitigating the effects of the alleged contamination. Consequently, we agree with the plaintiff that the trial court's indication of how CL&P might have used the $400,000 was inconsistent with the complaint's express allegations.

Assuming that CL&P has used the $400,000 to contain, remove, or otherwise mitigate the effects of the alleged contamination, we next must decide whether the trial court properly concluded that the complaint fails to state a claim pursuant to § 22a-452 (a). Whether the allegations contained in the complaint give rise to a cause of action under § 22a-452 (a) depends upon the scope of that provision. In resolving that question, "our paramount objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Stein* v. *Hillebrand*, 240 Conn. 35, 39–40, 688 A.2d 1317 (1997). In seeking to discern that intent, "we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to

implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 431, 692 A.2d 742 (1997).

The plain language of § 22a-452 (a) lends support to the view espoused by the plaintiff. Subsection (a) of § 22a-452 is broadly worded in terms that contain no express requirement that a party seeking reimbursement thereunder actually have participated directly in the removal, containment or mitigation of the pollution or contamination. Moreover, we must assume that the plaintiff can establish that he paid CL&P $400,000 to contain, remove, or otherwise mitigate the contamination of its property, that CL&P actually expended the $400,000 to contain, remove, or otherwise mitigate this contamination, and that the defendants negligently contributed to the contamination. Under these circumstances, we can discern no reasoned basis for distinguishing between the plaintiff's payment of $400,000 to CL&P, which the defendants contend falls outside the purview of § 22a-452 (a), and a $400,000 payment by the plaintiff to a contractor to remediate the contamination of CL&P's property, which even the defendants concede would fall within the scope of § 22a-452 (a).

The legislative history of § 22a-452 is devoid of any significant discussion regarding the specific statutory language relevant to the plaintiff's claim. Section 22a-452 was enacted, however, in 1969 as an amendment to the Connecticut Water Pollution Control Act (CWPCA); General Statutes § 22a-416 et seq.; which had been passed just two years earlier.[8] As originally enacted, § 22a-452 provided a right to reimbursement between

---

[8] Section 22a-452 originally was codified at General Statutes § 25-54ff until its recodification in 1983.

joint tortfeasors solely for the costs of containing and removing water pollution. See Public Acts 1969, No. 765, § 5. In 1979, the legislature added language authorizing reimbursement to those who had "otherwise mitigat[ed] the effects of" such pollution. See Public Acts 1979, No. 79-605, § 6 (P.A. 79-605). This expansion of the scope of the statutory language lends support for the less restrictive interpretation of § 22a-452 (a) urged by the plaintiff.[9]

The legislative policy that the CWPCA was intended to achieve also supports a more expansive reading of § 22a-452 (a) than the one adopted by the trial court. The CWPCA "was regarded, at the time of its enactment in 1967, as 'a declaration of war against water pollution.' 12 S. Proc., Pt. 2, 1967 Sess., p. 667, remarks of Senator William B. Stanley, chairman of Water Resources Committee. Initiated by then Governor John Dempsey, [the CWPCA] was intended to 'usher . . . in a new era in the treatment of our water resources. It embodies the concept that no one, whether individual, industry or community, has the right or privilege to render our water resources unusable by pollution.' Connecticut's Clean Water Act of 1967: An Analysis of Public Act 57, p. 2." *Starr* v. *Commissioner of Environmental Protection*, 226 Conn. 358, 376, 627 A.2d 1296 (1993).

---

[9] We note that the legislature's primary purpose in enacting P.A. 79-605 was to establish a state superfund to be used by the commissioner of the department of environmental protection to contain, remove, or otherwise mitigate the effects of the spill or discharge of oil, petroleum, and other hazardous wastes when the commissioner either could not determine who had caused the pollution or was unable to recover funds from the responsible party. See generally 22 H.R. Proc., Pt. 33, 1979 Sess., pp. 11427–44; 22 H.R. Proc., Pt. 35, 1979 Sess., pp. 12446–49; 22 S. Proc., Pt. 17, 1979 Sess., pp. 5841–49, 5870; Conn. Joint Standing Committee Hearings, Environment, Pt. 3, 1979 Sess., pp. 686–89, comments of commissioner of department of environmental protection; Conn. Joint Standing Committee Hearings, Environment, Pt. 5, 1979 Sess., pp. 1620–24, comments of Steven Hitchcock on behalf of commissioner of department of environmental protection; see also General Statutes § 22a-451.

"The legislative sentiment regarding the importance of the [CWPCA] crystallized in the [CWPCA's] declaration of policy, currently set forth in General Statutes § 22a-422, which provides that: 'It is found and declared that the pollution of the waters of the state is inimical to the public health, safety and welfare of the inhabitants of the state, is a public nuisance and is harmful to wildlife, fish and aquatic life and impairs domestic, agricultural, industrial, recreational and other legitimate beneficial uses of water, and that the use of public funds and the granting of tax exemptions for the purpose of controlling and eliminating such pollution is a public use and purpose for which public moneys may be expended and tax exemptions granted, and the necessity and public interest for the enactment of this chapter and the elimination of pollution is hereby declared as a matter of legislative determination.' " Id., 381. It is well established that we must construe remedial environmental statutes, such as § 22a-452, liberally in order to effectuate the legislature's intent. See *Keeney* v. *Old Saybrook*, 237 Conn. 135, 157, 676 A.2d 795 (1996); *Starr* v. *Commissioner of Environmental Protection*, supra, 382; *Manchester Environmental Coalition* v. *Stockton*, 184 Conn. 51, 57, 441 A.2d 68 (1981).

Although the reimbursement scheme established under § 22a-452 was not part of the CWPCA as originally enacted, the provisions of § 22a-452 must be read in a manner consistent with the overriding remedial purpose of the CWPCA. Whereas the commissioner of environmental protection is empowered to supervise, administer and enforce the CWPCA; General Statutes § 22a-424; § 22a-452 (a) broadly provides that any person, firm, corporation or municipality that contains, removes or otherwise mitigates the effects of contamination may seek reimbursement from any person, firm or corporation negligently responsible for such contam-

ination. The clear purpose of this provision is to encourage parties to pay for remediation by providing them with an opportunity to recoup at least some of their remediation costs from others who are also found to be responsible for the contamination.[10] That purpose would be undermined if we were to interpret § 22a-452 (a) as prohibiting parties, such as the plaintiff, from recovering costs under § 22a-452 (a) merely because they had achieved the same end by compensating an aggrieved landowner for the costs of remediation rather than by paying remediation costs directly.[11] Moreover, we note that when the legislature has sought to identify parties directly engaged in remediation activities, it has done so expressly. See General Statutes § 22a-452 (b).[12]

In light of the inclusive language of § 22a-452 and the broad remedial purpose of the statutory scheme of which it is a part, we conclude that the plaintiff is entitled to reimbursement from the defendants under

[10] Indeed, the legislature's commitment to encouraging remediation under the CWPCA is underscored by the fact that even those who, like the plaintiff, are themselves responsible for pollution or contamination nevertheless may seek reimbursement for their remediation costs, on a pro rata basis, from others who also are negligently responsible for the pollution or contamination.

[11] In support of the construction of § 22a-452 (a) adopted by the trial court, the defendants maintain that the legislature could not have intended for § 22a-452 (a) to apply to settlements of the kind reached in this case because, as in this case, such settlements often are reached only after extensive litigation and long after the contamination has occurred. See footnote 5 of this opinion. We are not persuaded by this argument because we find nothing in the statutory language or the pertinent legislative history to support it. Moreover, § 22a-452 (a) itself contains no express limitation period on claims for reimbursement brought by those parties who, the defendants themselves concede, have a right to do so, namely, those parties who take direct action to remediate the effects of the contamination.

We express no opinion, however, regarding the statute of limitations applicable to actions brought under § 22a-452 (a). Cf. *Doty* v. *Mucci*, 238 Conn. 800, 805 n.6, 679 A.2d 945 (1996). We likewise intimate no view regarding the possible applicability of any equitable time bar to a claim filed pursuant to § 22a-452 (a).

[12] See footnote 2 of this opinion.

§ 22a-452 (a) for their pro rata share of the costs of containing, removing or otherwise mitigating the contamination of CL&P's property if, as the plaintiff has alleged, the defendants are also negligently responsible for contaminating that property, and CL&P used the $400,000 it received from the plaintiff to remediate the contamination.[13] Accordingly, the trial court improperly granted the defendants' motions to strike.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.

---

[13] The defendants also contend that the reference to "joint negligence" in the second sentence of § 22a-452 (a) required the plaintiff to allege that the defendants acted in concert with each other or with the plaintiff in contaminating CL&P's property. There is nothing in the language or legislative history of this provision, however, to indicate that the legislature intended to restrict the scope of § 22a-452 (a) so drastically. Moreover, the defendants have failed to advance any persuasive reason why the legislature would have sought to limit § 22a-452 (a) in such a manner; indeed, the narrow interpretation urged by the defendants is inconsistent with the remedial purpose of the CWPCA. Accordingly, we reject the construction urged by the defendants.