ATC PARTNERSHIP *v.* COATS NORTH AMERICA
CONSOLIDATED, INC.
(SC 17806)

Norcott, Palmer, Vertefeuille, Zarella and Schaller, Js.

Argued September 7—officially released December 4, 2007

*Kerry M. Wisser*, with whom was *Nathan A. Schatz*, for the appellant (plaintiff).

*Peter J. McGrath, Jr.*, pro hac vice, with whom were *Jennifer Morgan DelMonico* and, on the brief, *Aimee L. Hoben*, for the appellee (substitute defendant).

*Opinion*

SCHALLER, J. This appeal concerns a piece of property owned by the plaintiff, ATC Partnership, and located in the town of Windham (town). The plaintiff appeals[1] from the trial court's summary judgment rendered in favor of the substitute defendant, Coats American, Inc.[2] The defendant's corporate predecessor is the American Thread Company (American Thread). All of the actions attributed to the defendant by the plaintiff in this matter are also attributable to American Thread. The plaintiff claims that the trial court improperly: (1) concluded that the plaintiff was not entitled to obtain reimbursement from the defendant pursuant to General Statutes § 22a-452 (a)[3] because the plaintiff had not expended any funds for the remediation of the property; (2) concluded that the plaintiff could not prevail on a

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] Prior to the filing of the motion for summary judgment, Coats American, Inc., was substituted for the named defendant in this action. We hereinafter refer to Coats American, Inc., as the defendant.

[3] General Statutes § 22a-452 (a) provides: "Any person, firm, corporation or municipality which contains or removes or otherwise mitigates the effects of oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes resulting from any discharge, spillage, uncontrolled loss, seepage or filtration of such substance or material or waste shall be entitled to reimbursement from any person, firm or corporation for the reasonable costs expended for such containment, removal, or mitigation, if such oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes pollution or contamination or other emergency resulted from the negligence or other actions of such person, firm or corporation. When such pollution or contamination or emergency results from the joint negligence or other actions of two or more persons, firms or corporations, each shall be liable to the others for a pro rata share of the costs of containing, and removing or otherwise mitigating the effects of the same and for all damage caused thereby."

claim of common-law indemnification; and (3) declined to recognize a cause of action for equitable indemnification.[4] We affirm the judgment of the trial court.

The record and our previous decision in *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, 272 Conn. 14, 861 A.2d 473 (2004) (*Northeast II*), reveal the following relevant facts. "The [entire parcel of land] consists of approximately forty acres of land with two dams and approximately twenty-one industrial buildings located on both sides of the Willimantic River in the former city of Willimantic, now in the town of Windham.[5] Most of the buildings are on parcels located on the north side of the river . . . . A variety of companies, culminating with American Thread, used the [entire parcel of land] from 1854 until 1985 for the manufacture of textiles, including thread, yarn and string. By 1985, American Thread had moved all of its production operations out of Connecticut, and in 1986, it sold the [entire parcel of land] to Eastern Connecticut Industrial Park Associates (Eastern)." Id., 18–19.

In order to sell the entire parcel of land to Eastern, American Thread was bound to abide by the provisions of the Connecticut Transfer Act (transfer act), which was enacted by No. 85-568 of the 1985 Public Acts, and is now codified at General Statutes § 22a-134 et seq. The transfer act required American Thread to file a Form III[6] with the department of environmental protec-

---

[4] Because we affirm the judgment of the trial court, it is unnecessary to reach the alternate ground for affirmance raised by the defendant, that the plaintiff's claim for reimbursement pursuant to § 22a-452 (a) was time barred under General Statutes § 52-577c (b).

[5] The geographic area that previously had been the city of Willimantic is now considered a service district in the town of Windham. *Northeast II*, supra, 272 Conn. 19 n.4.

[6] A Form III is one of the many devices used by the transfer act to govern the transfer of hazardous waste establishments. "[A] transferor of land must complete Form III when 'a release has occurred which has not been cleaned up in a manner approved by the Commissioner of Environmental Protection or for any reason a negative declaration cannot be submitted.' On Form III, the transferor certifies that 'to the extent necessary to minimize or mitigate

tion (department). The Form III legally obligated American Thread to investigate and to remediate any pollution found on the land about to be transferred. See footnote 6 of this opinion. Thereafter, on January 29, 1986, American Thread entered into a consent agreement[7] with the department that required American Thread to remediate the land to the satisfaction of the commissioner of the department. In December, 1986, in an action not subject to this litigation and whose legitimacy is not challenged, Eastern subdivided the entire parcel of land into an eastern portion and a western portion, and the eastern portion was sold to third parties. The department, on February 20, 1987, acknowledged that American Thread had complied with its legal obligation to remediate the entire parcel of land, including the eastern portion and the western portion. Thereafter, Eastern sold to the plaintiff the western portion (the property) of the entire parcel.[8] *Northeast II*, supra, 272 Conn. 19 and n.5. The record is clear that at no time during its period of ownership was the plaintiff ever a tortfeasor in an action regarding the property.

a threat to human health or the environment, I shall contain, remove, or otherwise mitigate the effects of any discharge, spillage, controlled loss, seepage, or filtration of hazardous waste at the site of . . . establishment in accordance with procedures and a time schedule approved by the Commissioner of Environmental Protection pursuant to an order, stipulated judgment, or consent agreement.' The president of American Thread signed the applicable Form III on October 25, 1985." *Northeast II*, supra, 272 Conn. 23 n.11 and 40.

[7] A consent agreement is defined in General Statutes § 22a-432, which provides in relevant part: "If the commissioner finds that any person . . . is maintaining any facility or condition which reasonably can be expected to create a source of pollution to the waters of the state, he may issue an order to such person to take the necessary steps to correct such potential source of pollution. . . ."

[8] The plaintiff asserts that the consent agreement and the subsequent February 20, 1987 letter from the department do not apply to the property purchased by the plaintiff from Eastern. The record is clear that when the defendant entered into the consent agreement with the department, the agreement covered the entire parcel of land sold to Eastern, which included the property sold to the plaintiff.

After the plaintiff took control of the property, it worked together with the town, the town's redevelopment agency, Northeast Ct. Economic Alliance, Inc. (Northeast), and various architectural, economic and environmental consultants, to prepare a redevelopment plan. Id., 19. Although various remediation plans were proposed, and the plaintiff had entered into negotiations concerning the sale of the property to the town and Northeast, the plans were not implemented and the sale negotiations were unsuccessful. Id., 19–20. Subsequently, Northeast and the town condemned the property and paid the plaintiff $1. Id., 20–21. The plaintiff challenged this valuation, and after years of litigation, including two appeals to this court,[9] the plaintiff was awarded $1,752,365 as just compensation for the condemnation of the property. Id., 23–24. In arriving at this valuation, the trial court deducted $2,696,100 from the actual value of the land, a figure that it determined was the cost to repair, stabilize and remediate the property. Id., 22–24, 52. We reviewed the trial court's valuation

[9] In the first appeal, *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, 256 Conn. 813, 815, 776 A.2d 1068 (2001) (*Northeast I*), the trial court granted ATC Partnership's motion to exclude as a matter of law evidence of environmental contamination and remediation costs. The town and Northeast appealed from that judgment, and this court concluded that "evidence of environmental contamination and remediation costs may not be excluded, as a matter of law, from a condemnation proceeding"; id., 816–17; because that exclusion results in the misapplication of "the usual standard established for calculating just compensation, namely, fair market value." Id., 827. Accordingly, this court reversed the judgment of the trial court in *Northeast I* and remanded the matter for a new trial. Id., 843.

In the second appeal, *Northeast II*, supra, 272 Conn. 14, which followed the trial held on remand from our decision in *Northeast I*, the trial court first determined the " 'clean' " value of the land. Id., 22. The trial court then reduced that value based on the " 'substantial expenses' " that would be incurred to clean and stabilize the property; id.; to arrive at a net fair market value of $1,752,365. Id., 23. On appeal, the town and Northeast asked us to modify the judgment of the trial court. We declined to do so, and affirmed the judgment of the trial court. Id., 24.

in *Northeast II*, and affirmed all aspects of the trial court's judgment.[10] Id., 18, 24.

The plaintiff initiated the present action against the defendant in 2005, seeking to recover the $2,696,100 cost of remediation by which the trial court had reduced the actual value of the land in the condemnation proceeding. The plaintiff's complaint asserts that it should be able to recover this reduction in value as reimbursement, either by way of a statutory cause of action rooted in § 22a-452 (a) or by way of a common-law action of indemnification. Alternatively, the plaintiff asks for the recognition of a new cause of action for equitable indemnification.

The trial court granted the defendant's motion for summary judgment with regard to the plaintiff's claim pursuant to § 22a-452 (a), determining that because the plaintiff had taken no action to remediate the land, it was not entitled to reimbursement under § 22a-452 (a). The trial court also granted the defendant's motion for summary judgment with regard to the indemnification claim. The court determined that, under the Appellate Court's decision in *McCann Real Equities Series XXII, LLC* v. *David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 890 A.2d 140, cert. denied, 277 Conn. 928, 895 A.2d 798 (2006), the claim of indemnification must fail because the plaintiff, having purchased the property "as is," could not prove that the defendant had caused its injury, a point that the plaintiff conceded at oral argument to the trial court concerning the motion for

[10] The trial court, in fashioning the award in the condemnation proceeding, considered various collateral sources, including the possibility that either state grants or environmental litigation, or both, might cover the diminution in value. See *Northeast II*, supra, 272 Conn. 23. Although the briefs filed by the parties in this case indicate that they dispute the extent to which these collateral sources actually ameliorated the reduction in the property's value, the parties agree that this appeal from the trial court's summary judgment does not concern the amount of the deduction, but whether the plaintiff may seek reimbursement.

summary judgment. The court did not reach the defendant's claim that the plaintiff's action was barred by the applicable statute of limitations. Finally, the court rejected the plaintiff's request for equitable indemnification on the ground that no such remedy exists in Connecticut. This appeal followed.

As a preliminary matter, we set forth the applicable standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . The test is whether the party moving for summary judgment would be entitled to a directed verdict on the same facts. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Historic District Commission* v. *Hall,* 282 Conn. 672, 676–77, 923 A.2d 726 (2007); *Reardon* v. *Windswept Farm, LLC,* 280 Conn. 153, 158, 905 A.2d 1156 (2006).

I

We first turn to the plaintiff's claim that the trial court improperly granted the defendant's motion for summary judgment on the plaintiff's asserted cause of action for statutory reimbursement under § 22a-452 (a). Specifically, the plaintiff claims that because the trial court in the condemnation proceeding reduced the value of the property by an amount equal to the cost for environmental remediation of the property, the plaintiff

should be reimbursed for that amount pursuant to § 22a-452 (a).[11] We disagree.

This issue involves a question of statutory interpretation that requires plenary review. *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 756, 900 A.2d 1 (2006); *Cogan* v. *Chase Manhattan Auto Financial Corp.*, 276 Conn. 1, 7, 882 A.2d 597 (2005). When interpreting a statute, our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." General Statutes § 1-2z; see also *D'Angelo Development & Construction Co.* v. *Cordovano*, 278 Conn. 237, 243, 897 A.2d 81 (2006); *Chatterjee* v. *Commissioner of Revenue Services*, 277 Conn. 681, 689, 894 A.2d 919 (2006). "In construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended." *Norwich Land Co.* v. *Public Utilities Commission*, 170 Conn. 1, 4, 363 A.2d 1386 (1975).

Section 22a-452 (a) provides in relevant part: "Any person, firm, corporation or municipality *which contains or removes or otherwise mitigates* the effects of oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes resulting from any discharge, spillage, uncontrolled loss, seepage or filtration of such substance or material or waste shall be entitled to reimbursement from any person, firm or corporation for the reasonable costs expended for such

[11] The plaintiff also asserts that the defendant was responsible for causing the environmental contamination, a charge that the defendant denies.

containment, removal, or mitigation, if such oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes pollution or contamination or other emergency resulted from the negligence or other actions of such person, firm or corporation. . . ." (Emphasis added.)

Section 22a-452 (a) lists the types of entities that are entitled to reimbursement under the statute as "[a]ny person, firm, corporation or municipality . . . ." The language of the statute then specifies precisely *which* persons, firms, corporations or municipalities are entitled to reimbursement, by modifying those categories or entities with the restrictive clause "which contains or removes or otherwise mitigates . . . ." General Statutes § 22a-452 (a). The plain language of this modifying clause necessarily limits those persons or entities that may recover under the statute. In other words, § 22a-452 (a) authorizes only those persons or entities that have taken action to remediate contaminated land to obtain reimbursement for "the reasonable costs expended" for the remediation. Because "contains," "removes," and "mitigates" are all verbs that indicate action on the part of the entity attempting to recover reimbursement, such action is a prerequisite for success in an action brought under § 22a-452 (a). In the present case, the record is clear that the plaintiff has taken no action whatsoever to remediate the land and has not expended any costs for remediation. Rather, it is simply attempting, by asserting a claim pursuant to § 22a-452 (a), to recoup the amount that the trial court had deducted from the value of the land, during the condemnation proceeding, to account for the cost to remediate the property. We agree with the trial court and conclude that in order for a plaintiff to recover under § 22a-452 (a), the plaintiff must establish that it took action in specific ways to effectuate the remediation of the contaminated land and that it expended costs to do so.

Because the plaintiff has not taken any measures to remediate the property, the trial court properly granted the defendant's motion for summary judgment with regard to the plaintiff's claim for reimbursement pursuant to § 22a-452 (a).

We are not persuaded by the plaintiff's argument that, under our interpretation of the statute in *Knight* v. *F. L. Roberts & Co.*, 241 Conn. 466, 696 A.2d 1249 (1997), the mere earmarking of a sum of money as a cost of remediation—without any further action—is enough to satisfy the requirements of § 22a-452 (a), and, thus, to give rise to a cause of action under that statute. The plaintiff's characterization of our decision in *Knight* fails to recognize the procedural posture of that case and, therefore, inaccurately interprets our decision.

In *Knight*, the plaintiff paid $400,000 to a utility company toward the cost of mitigating the contamination of its property and sought reimbursement pursuant to § 22a-452 (a) from a third party who allegedly was responsible for the contamination. Id., 468–69. The trial court granted the defendant's motion to strike because the plaintiff failed to allege that he had engaged directly in mitigation efforts and because the utility might not use the funds for remediation. Id., 469.

On appeal, we determined that the plaintiff could recover reimbursement pursuant to § 22a-452 (a). Id., 475–76. The procedural posture of the case, which required us to decide the case in the context of a motion to strike, was critical to the outcome of the appeal. Given the standard of review for a motion to strike, which required us to adopt the facts as articulated in the complaint and to construe the complaint in the manner most favorable to sustaining its legal sufficiency; see *AvalonBay Communities, Inc.* v. *Zoning Commission*, 280 Conn. 405, 412, 908 A.2d 1033 (2006); we were required to *"assume that the plaintiff can*

*establish that he paid [the utility] $400,000 to contain, remove, or otherwise mitigate the contamination of its property, that [the utility] actually expended the $400,000 to contain, remove, or otherwise mitigate this contamination,* and that the defendants negligently contributed to the contamination." (Emphasis added.) *Knight* v. *F. L. Roberts & Co.,* supra, 241 Conn. 472. Consequently, we concluded that the trial court's determination that the utility might not have used the settlement for remediation was inconsistent with the complaint's express allegations and was improper under the applicable standard of review. Id. We further determined that the allegations were sufficient to survive a motion to strike because the language of "[s]ubsection (a) of § 22a-452 is broadly worded in terms that contain no express requirement that a party seeking reimbursement thereunder actually have participated directly in the removal, containment or mitigation of the pollution or contamination." Id. Although we concluded that it was not necessary for the plaintiff to allege that he took direct action to remediate contaminated land, we did not suggest that a plaintiff may take no action whatsoever and still recover under § 22a-452 (a).

Under the circumstances in *Knight,* we could discern no reasoned basis for distinguishing between the plaintiff's settlement payment to the utility and the plaintiff's payment to a contractor for work performed to remediate the contamination of the utility's property.[12] Id. Our decision in *Knight* did not represent an expansion of the right of action created by § 22a-452 (a), but, instead, was a practical reading of the statutory language "otherwise mitigates . . . ." Indeed, it would be incongruous to hold that a plaintiff who pays a third party to remediate a contaminated property could not recover while a

---

[12] The defendants in *Knight* agreed that a payment to a third party contractor could be recovered by a plaintiff in an action pursuant to § 22a-452 (a). *Knight* v. *F. L. Roberts & Co.,* supra, 241 Conn. 472.

plaintiff who directly remediates a contaminated property can recover, especially in light of the statutory language in § 22a-452 (b),[13] which contemplates that third parties may assist in the remediation of land.

The plaintiff in the present appeal argues that it is similarly situated to the plaintiff in *Knight*. The gist of the plaintiff's argument is that because the trial court valued the cost to remediate the property at $2,696,100, the plaintiff should be able to recover this value from the defendant, just as the plaintiff in *Knight* was able to proceed with the claim for a portion of a settlement paid to a third party for the remediation of the land in question. Although it is well established that remedial environmental statutes, such as § 22a-452 (a), are to be construed liberally in order to effectuate the legislature's intent; see, e.g., *Keeney* v. *Old Saybrook*, 237 Conn. 135, 157, 676 A.2d 795 (1996); *Starr* v. *Commissioner of Environmental Protection*, 226 Conn. 358, 382, 627 A.2d 1296 (1993); *Manchester Environmental Coalition* v. *Stockton*, 184 Conn. 51, 57, 441 A.2d 68 (1981), overruled in part on other grounds by *Waterbury* v. *Washington*, 260 Conn. 506, 556, 800 A.2d 1102 (2002); it is axiomatic that we should read statutes in accordance with their plain meaning. General Statutes § 1-2z.

To adopt the plaintiff's position would require us to ignore the plain language of § 22a-452 (a), as well as

---

[13] General Statutes § 22a-452 (b) provides in relevant part: "No person, firm or corporation which renders assistance or advice in mitigating or attempting to mitigate the effects of an actual or threatened discharge of oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous materials, other than a discharge of oil as defined in section 22a-457b, to the surface waters of the state, or which assists in preventing, cleaning-up or disposing of any such discharge shall be held liable, notwithstanding any other provision of law, for civil damages as a result of any act or omission by him in rendering such assistance or advice, except acts or omissions amounting to gross negligence or wilful or wanton misconduct, unless he is compensated for such assistance or advice for more than actual expenses. . . ."

our interpretation of § 22a-452 (a) in *Knight*. We assumed, in *Knight*, that the plaintiff could establish at trial that the settlement, or a portion thereof, actually was used by the utility to remediate the land in question. *Knight* v. *F. L. Roberts & Co.*, supra, 241 Conn. 472. Implicit in this assumption was the idea that in order to prevail at trial, the plaintiff in *Knight* was required to establish that the settlement, or a portion thereof, was used to remediate the land. By contrast, the plaintiff in the present action has not and cannot demonstrate that it has taken any action, directly or indirectly, to remediate the property. The plaintiff's circumstances are not analogous to those of the plaintiff in *Knight*, and that decision does not apply to the facts of the present case.

II

We now turn to the plaintiff's claim that the trial court improperly granted the defendant's motion for summary judgment on the plaintiff's asserted cause of action for common-law indemnification.[14] Specifically,

[14] In its memorandum of decision, the trial court applied *McCann Real Equities Series XXII, LLC* v. *David McDermott Chevrolet, Inc.*, supra, 93 Conn. App. 488, 523–25 (*McCann*), and granted the defendant's motion for summary judgment on the following basis. The court decided that the plaintiff had purchased the property " 'in its present condition,' " with knowledge of the property's polluted condition and the opportunity to inspect the property prior to purchase. The court therefore determined that the plaintiff could not establish, as a matter of law, that the defendant had caused or proximately had caused the damage to the property.

In this appeal, the plaintiff seeks to distinguish its position from the situation governed by *McCann* by arguing that the defendant's filing of a Form III should give rise to liability in indemnification. This argument is without merit. The defendant filed Form III in order to effectuate the transfer of its entire parcel of land to Eastern. Form III legally obligated American Thread to investigate and to remediate any pollution found on land about to be transferred. Moreover, on January 29, 1986, American Thread entered into a consent agreement with the department that required American Thread to remediate the land to the satisfaction of the commissioner of the department. The department, on February 20, 1987, acknowledged that American Thread had complied fully with its legal obligation to remediate the entire parcel of land, including the eastern portion and the western

the plaintiff contends that it is entitled to recover in tort from the defendant because: (1) the defendant had claimed legal responsibility for the property by filing a Form III pursuant to the transfer act; (2) the defendant actually caused the pollution on the property, which had not been remediated at the time of the transfer; and (3) the measure of the plaintiff's damages was the diminution in value found by the trial court as a cost of remediation in the condemnation proceeding. The plaintiff claims that it effectively was charged the cost of remediation when the property was condemned. We disagree.

It is helpful initially to identify what the plaintiff is *not* claiming. The plaintiff seeks recovery based only on tortious indemnification, not contractual indemnification. In *Kaplan* v. *Merberg Wrecking Corp.*, 152 Conn. 405, 415–16, 207 A.2d 732 (1965), we explained that tortious indemnification is an action that arises between two tortfeasors, "one, whose passive negligence resulted in a monetary recovery by the plaintiff; and a second, whose active negligence renders him liable to the first by way of reimbursement." *Smith* v. *New Haven*, 258 Conn. 56, 66, 779 A.2d 104 (2001). Our decision in *Kaplan* imposes "an implied obligation of indemnity on a tortfeasor whose active negligence is primarily responsible for a plaintiff's injuries, thus superseding the indemnitee's passive negligence." Id. As a result, in order to recover under a theory of tortious indemnification, the first tortfeasor, seeking indemnification, must demonstrate that the second tortfeasor's "active negligence, rather than the [first tortfeasor's] own passive negligence, was the direct, immediate cause" of the

portion. To conclude that the defendant should be held liable in tort because it filed a Form III would, in effect, create limitless liability for any party who files a Form III. Such a conclusion would undercut the clear policy imperatives of environmental clean-up that have been adopted by the legislature. See General Statutes § 22a-134 et seq.; General Statutes § 22a-452 (a).

harm in question. Id.; *Kaplan* v. *Merberg Wrecking Corp.*, supra, 416.

The record in this appeal demonstrates that the plaintiff and the defendant are not joint tortfeasors, a prerequisite for a viable tortious indemnification claim. *Bovat* v. *Waterbury*, 258 Conn. 574, 600, 783 A.2d 1001 (2001). Indeed, the plaintiff has never been charged with any wrongdoing with regard to the property or its remediation. This appeal arises out of a real estate transaction between Eastern and the plaintiff and a condemnation action in which the plaintiff challenged the first valuation of the property. This is not a case in which the plaintiff was an initial defendant and is now seeking to recover losses paid due to a harm or injury. Rather, the plaintiff in this action is simply trying, through the vehicle of tortious indemnification, to recover the reduction in value of the property specified by the trial court that oversaw the property's condemnation. The plaintiff does not cite to any authority, and we are not aware of any, that applies the elements of tortious indemnification to a situation such as this, where the indemnitee and indemnitor were never joint tortfeasors. We conclude that the trial court properly granted the defendant's motion for summary judgment with regard to the plaintiff's claim of tortious indemnification.

## III

Finally, we discuss the plaintiff's request that this court recognize a new cause of action for equitable indemnification. An exhaustive search of Connecticut case law reveals no hard and fast test that courts apply when determining whether to recognize new causes of action. We do have the inherent authority, pursuant to the state constitution, to create new causes of action. *Binette* v. *Sabo*, 244 Conn. 23, 34, 710 A.2d 688 (1998). Moreover, it is beyond dispute that we have the power to recognize new tort causes of action, whether derived

from a statutory provision or rooted in the common law. *Rizzuto* v. *Davidson Ladders, Inc.*, 280 Conn. 225, 235, 905 A.2d 1165 (2006); see, e.g., *Mead* v. *Burns*, 199 Conn. 651, 663, 509 A.2d 11 (1986) (recognizing action for damages under Connecticut Unfair Trade Practices Act for violations of Connecticut Unfair Insurance Practices Act); *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 480, 427 A.2d 385 (1980) (recognizing tort of wrongful discharge); *Urban* v. *Hartford Gas Co.*, 139 Conn. 301, 307, 93 A.2d 292 (1952) (recognizing torts of intentional and negligent infliction of emotional distress).

When we acknowledge new causes of action, we also look to see if the judicial sanctions available are so ineffective as to warrant the recognition of a new cause of action. *Rizzuto* v. *Davidson Ladders, Inc.*, supra, 280 Conn. 235–36. To determine whether existing remedies are sufficient to compensate those who seek the recognition of a new cause of action, we first analyze the scope and applicability of the current remedies under the facts alleged by the plaintiff. Id., 236. Finally, we are mindful of growing judicial receptivity to the new cause of action, but we remain acutely aware of relevant statutes and do not ignore the statement of public policy that such statutes represent. *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 179 Conn. 480.

The legislature has created two statutory rights of action, through § 22a-452 (a) and the transfer act, that govern the scenario before us in this appeal. We conclude that the current statutory causes of action discussed in this opinion provide more than adequate vehicles of recovery for the plaintiff in the present action. The principles that guide us in recognizing new causes of action require us to be mindful of public policy as established by the legislature. See id. To allow

the plaintiff to recover despite the fact that it took no action and expended no costs to remediate the property, would run contrary to legislative policy as reflected by § 22a-452 (a). Moreover, to allow the plaintiff to recover in tort despite the fact that the defendant fully met its obligation to remediate the land would undermine the purposes of the transfer act. Accordingly, we decline to recognize the new cause of action sought by the plaintiff.

The judgment is affirmed.

In this opinion the other justices concurred.