PRECISION MECHANICAL SERVICES, INC. *v.* T.J.
PFUND ASSOCIATES, INC., ET AL.
(AC 27489)

McLachlan, Harper and McDonald, Js.

Argued October 24, 2007—officially released August 5, 2008

*Brian P. Kenney,* for the appellant (plaintiff).

*Christopher B. Weldon,* with whom, on the brief, was *Darren P. Renner,* for the appellees (named defendant et al.).

*Opinion*

MCDONALD, J. The plaintiff, Precision Mechanical Services, Inc., appeals from the summary judgment rendered by the trial court in favor of the defendants T.J. Pfund Associates, Inc., and Marianne Pfund.[1] The plaintiff claims that the court improperly concluded that there was no genuine issue of material fact and that the defendants were entitled to judgment as a matter of law as to the plaintiff's counts of negligence and breach of contract. We reverse the judgment of the trial court.

The plaintiff filed the operative complaint against the defendants and AFCO Credit Corporation (AFCO), an insurance premium finance company, and Scottsdale

---

[1] The plaintiff also named AFCO Credit Corporation, N.I.F. Services of New England, Inc., and Scottsdale Insurance Company as defendants. Those entities are not parties to this appeal. We therefore refer to T.J. Pfund Associates, Inc., and Pfund as the defendants.

Insurance Company (Scottsdale).[2] In its complaint, the plaintiff, a contractor engaged in the installation and repair of plumbing, heating and fire suppression systems, brought an action against the defendants, an insurance agent and brokerage firm.[3] In counts one and two of the complaint, which set forth claims of negligence and breach of contract, the plaintiff alleged that in September, 1995, it had hired the defendants to procure general liability insurance coverage for the period of September 26, 1995, through January 1, 1997. The plaintiff alleged that in so doing, the defendants were negligent and breached the contract, and caused the plaintiff to be without insurance to cover liability claims arising against it on August 8, 1996. After discovery proceedings, the defendants filed a motion for summary judgment with exhibits and documentary evidence, and, in opposition to the motion, the plaintiff filed documentary evidence.

The court granted the motion for summary judgment on the ground that once a twelve month general liability policy was obtained with Scottsdale in September, 1995, the agency relationship between the plaintiff and the defendants ended, and that, thereafter, the defendants owed no duty to the plaintiff. The court also found that absent any directive or authorization to do so, the defendants had no duty to inform the plaintiff that AFCO had, on May 30, 1996, cancelled the general liability policy because the plaintiff had not made a monthly installment payment to AFCO.

---

[2] See footnote 1 of this opinion.

[3] Our Supreme Court has recognized that "[a]n insurance broker is one who acts as a middleman between the insured and insurer and who solicits insurance from the public under no employment from any special company and who either places an order for insurance with a company selected by the insured, or, in the absence of such selection, with a company the broker selects." (Internal quotation marks omitted.) *Lewis* v. *Michigan Millers Mutual Ins. Co.*, 154 Conn. 660, 664, 228 A.2d 803 (1967).

On appeal, the plaintiff claims that the court improperly concluded that as a matter of law, the defendants owed the plaintiff no duty of care because the agency relationship between the defendants, an insurance agent and brokerage firm, and the plaintiff, an insured, terminated upon procurement of a twelve month general liability insurance policy. The plaintiff argues that it submitted evidence from which the trier of fact could find an ongoing agency relationship between the plaintiff, who desired a fifteen month policy, and the defendants, which persisted after the procurement of the twelve month Scottsdale policy. The plaintiff also refers to its submissions establishing that the defendants received notice of AFCO's policy cancellation in May, 1996, and that the defendants, until August 10, 1996, continuously made representations to the plaintiff that the Scottsdale policy was still in effect until September, 1996. The plaintiff also contends that on the basis of the evidence presented, a genuine issue of material fact remained as to whether the defendants breached their duty of care. We agree with the plaintiff.

We first set forth the applicable standard of review. Our review of the trial court's decision to grant the defendants' motion for summary judgment is plenary. See *ATC Partnership* v. *Coats North America Consolidated, Inc.*, 284 Conn. 537, 544, 935 A.2d 115 (2007). "The law governing summary judgment and the accompanying standard of review are well settled. Practice Book § [17-49] requires that judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case. . . .

"In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that

the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent." (Internal quotation marks omitted.) *Gold* v. *East Haddam*, 103 Conn. App. 369, 373, 928 A.2d 1234, cert. granted on other grounds, 285 Conn. 901, 938 A.2d 592 (2007). "[I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Citation omitted; internal quotation marks omitted.) *Barasso* v. *Rear Still Hill Road, LLC*, 81 Conn. App. 798, 803, 842 A.2d 1134 (2004).

We begin by setting forth the legal principles relevant to this case. "The existence of a duty is a question of law and [o]nly if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand."[4]

---

[4] "The nature of the duty, and the specific persons to whom it is owned, are determined by the circumstances surrounding the conduct of the individual. . . . Although it has been said that no universal test for [duty] has ever been formulated . . . our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. . . . Furthermore, [a] duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." (Citation omitted; internal quotation marks omitted.) *Nazami* v. *Patrons Mutual Ins. Co.*, 280 Conn. 619, 630–31, 910 A.2d 209 (2006).

(Internal quotation marks omitted.) *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 384, 650 A.2d 153 (1994). It is well established that an insurance broker "owes a duty to his principal to exercise reasonable skill, care, and diligence in effecting the insurance, and any negligence or other breach of duty on his part which defeats the insurance which [the broker] undertakes to secure will render [the broker] liable to his principal for the resulting loss. . . . Where [a broker] undertakes to procure a policy affording protection against a designated risk, the law imposes upon him an obligation to perform with reasonable care the duty he has assumed, and he may be held liable for loss properly attributable to his default. The principal may sue either for breach of the contract or in tort for breach of duty imposed by it." (Citation omitted.) *Ursini* v. *Goldman*, 118 Conn. 554, 559, 173 A. 789 (1934).

Our Supreme Court also has held that "[w]hen procuring insurance for a person [or entity], a[n] [insurance] broker becomes the agent of that person [or entity] for that purpose. . . . Once that purpose is accomplished, however, and the insurance is procured, the agency relationship between the insured and the broker terminates, and the broker is without any authority to do anything which further affects the insured unless expressly or impliedly authorized by the insured to do so." (Citations omitted.) *Lewis* v. *Michigan Millers Mutual Ins. Co.*, 154 Conn. 660, 664, 228 A.2d 803 (1967); see also 12 E. Holmes, Appleman on Insurance 2d (1999) § 88.4, p. 721 ("[o]rdinarily, an agent or broker's obligation to his client ends with the placement of a policy unless he either agrees to do certain renewal or other servicing acts or through some understanding or pattern of conduct the insured relies on the agent or broker for that servicing").

We recognize that as a general rule, the agency relationship between a broker and the insured terminates

upon procurement of the requested insurance policy. See *Lewis* v. *Michigan Millers Mutual Ins. Co.*, supra, 154 Conn. 664. However, "[i]nherent in the obligation to seek continuation of an insurance policy is the duty to notify the applicant if the insurer declines to continue [to insure] the risk, so the applicant may not be lulled into a feeling of security or put to prejudicial delay in seeking protections elsewhere." (Internal quotation marks omitted.) *Lazzara* v. *Howard A. Esser, Inc.*, 802 F.2d 260, 266 (7th Cir. 1986); see also 12 E. Holmes, supra, § 86.6, p. 497 ("[a]n agent or broker cannot sit idly with a cancellation notice or information, but must seasonably inform the insured client thereby giving the client sufficient time to obtain protect[ion] with another insurer").

In opposition to the defendants' motion for summary judgment, the plaintiff submitted the deposition testimony of the plaintiff's president, Kevin Wypychoski; Wypychoski's correspondence with the defendants; the defendants' correspondence with N.I.F. Services of New England (N.I.F. Services), an insurance brokerage firm; and other documents. From these submissions, the trier of fact reasonably could find the following facts. The plaintiff retained the defendants, an insurance agent and brokerage firm, to procure general liability insurance coverage for the period of September 26, 1995, through January 1, 1997. On September 27, 1995, the defendants wrote to Wypychoski, enclosing an identification card and informing the plaintiff that the general liability policy, which would have a premium of $4878.08, was expected any day and would provide coverage from September 25, 1995, to January 1, 1997.

The premium was itemized as follows: $3883.03 for twelve months of coverage commencing on September 25, 1995, and ending on September 25, 1996, and approximately $995 for three months of coverage commencing on September 25, 1996, and ending on January 1, 1997.

At the time, the defendants arranged for the plaintiff to use AFCO to finance this premium and, in so doing, on October 24, 1995, informed AFCO that the policy financed was with Scottsdale for the period of September 25, 1995, to January 1, 1997, and that the premium was $4597 plus a tax of $144.08, a filing fee of $37 and an inspection fee of $100. On September 26, 1995, the defendants had written to N.I.F. Services, Scottsdale's broker, acknowledging receipt of the binder and insurance for twelve months of general liability coverage. At that time, the defendants mentioned that when the policy was issued, they would be requesting an amendment extending coverage to January 1, 1997, as initially requested by the plaintiff. On November 2, 1995, the defendants wrote to N.I.F. Services seeking an amendment of the policy term that would add coverage from September 25, 1996, to January 1, 1997, because the plaintiff wanted all of its insurance policies to provide coverage until January 1, 1997.

In December, 1995, Wypychoski learned that the Scottsdale policy provided only twelve months of coverage. After Wypychoski asked the defendants to account for the discrepancy between the coverage requested and the coverage procured, the defendants informed him that they would obtain fifteen months of coverage. In a letter dated December 27, 1995, the defendants reminded N.I.F. Services that they still were waiting for the amendment of the policy that would provide the additional three months of coverage. On February 8, 1996, the defendants wrote to N.I.F. Services concerning an $895.50 credit that was due to the plaintiff, which the defendants believed was because the plaintiff's general liability policy was financed with AFCO for the term September 25, 1995, to January 1, 1997, when, in fact, the policy term was September 25, 1995, to September 25, 1996. Referring to a pending request to extend the policy to January 1, 1997, the defendants

attached a copy of their December 27, 1995 letter. In the February letter, the defendants stated that they thought that the $895.50 was extra money from AFCO for the general liability policy extension. The defendants asked N.I.F. Services to process the extension endorsement and to allocate the AFCO financing properly.

In April, 1996, the defendants advised Wypychoski that they had not been able to obtain the additional three months of coverage. The defendants advised the plaintiff that it had been overpaying AFCO for the twelve month policy and that the plaintiff was entitled to a credit from AFCO. After receiving the defendants' advice to do so, the plaintiff then ceased making its monthly payments to AFCO. Thereafter, AFCO cancelled the Scottsdale policy. On May 6, 1996, AFCO mailed a copy of the notice of intent to cancel to the defendants, which the defendants received and placed in their files. On May 23, 1996, AFCO sent to the defendants a notice of cancellation, which also was placed in the defendants' files. Cancellation of the policy was effective on May 30, 1996, for failure to pay the $449.14 monthly financed premium payment, an amount based on the existence of a fifteen month policy, and $29.95 in late fees.

The plaintiff also submitted correspondence from which the trier of fact reasonably could find that until August 10, 1996, the defendants continued to represent to the plaintiff that the general liability policy with Scottsdale remained in effect until September, 1996. On July 17 and 19, 1996, the defendants issued a certificate of insurance to the plaintiff, stating that the plaintiff had a general liability policy with Scottsdale. On July 23, 1996, the defendants sent a letter to the plaintiff with an attached check for returned premium in the amount of $744.45. In the letter, the defendants wrote to Wypychoski confirming that the defendants had been attempting to get the Scottsdale general liability policy

endorsed to extend to January 1, 1997, per his request. The defendants stated that Scottsdale could not endorse for September 26, 1996, to January 1, 1997, and had sent back the additional premium and extra money in the plaintiff's deposit. The defendants added that if the plaintiff continued to have no employees, Scottsdale would not offer a renewal quotation for September, 1996. The defendants asked Wypychoski about renewal and stated that if the plaintiff did not contact the defendants, the defendants would contact the plaintiff to provide it with options for future general liability coverage.[5]

On August 9, 1996, an employee of the plaintiff was performing repair services at a condominium unit in Branford. While these services were being performed, a fire occurred that caused damage to the condominium. The resulting fire damage gave rise to a number of lawsuits against the plaintiff, which, on August 10, 1996, learned from the defendants, for the first time, that its liability policy had been cancelled in May, 1996.

Although we agree that a broker would have no liability for failing to notify the insured of the cancellation of its policy when the agency relationship had ended; see *Lewis* v. *Michigan Millers Mutual Ins. Co.*, supra, 154 Conn. 664; *Rovella* v. *Standard Accident Ins. Co.*,

---

[5] In the July 23, 1996 letter, the defendants wrote the plaintiff as follows: "Enclosed is a check for $744.45 and it is yours! Since the General Liability Policy was written with Scottsdale, I have been attempting to get the policy endorsed to extend to 1/1/97 per your request. You paid the extra money in your deposit to AFCO and we have been attempting to get the endorsement done. Now, they tell me that [they] can't endorse from 9/96 to 1/97 and have sent back the additional premium.

"As I mentioned earlier this year, if you do not continue to have any employees, they will not offer a renewal quotation for September, 1996. Their program guidelines do not permit contractors subbing all the work out, etc. When you have a minute, give me a call to let me know how the business stands for the renewal term, to determine what we can do.

"If I do not hear from you, I will touch base in early August so you know what options you have for the General Liability."

121 Conn. 134, 183 A. 377 (1936); this case presents a different scenario. On the basis of the plaintiff's submissions, which we must view in a light most favorable to the plaintiff, we conclude that there was a genuine issue of material fact as to the existence of an agency relationship between the plaintiff and the defendants after September, 1995; see *Wesley* v. *Schaller Subaru, Inc.*, 277 Conn. 526, 543, 893 A.2d 389 (2006) (" 'existence of an agency relationship is question of fact' "); and, therefore, the court improperly concluded that the defendants owed the plaintiff no duty of care after September, 1995. In *Rovella* v. *Standard Accident Ins. Co.*, supra, 134, it also was undisputed that the plaintiff insured had received notice of cancellation directly from her insurer. In this case, Wypychoski submitted evidence that the plaintiff never received any notice of cancellation of the Scottsdale policy before August 10, 1996. From the plaintiff's submissions, the trier of fact also could find that after the defendants, in May, 1996, received a copy of the notice of intent to cancel and the notice of cancellation of the Scottsdale general liability policy, they, unlike the brokers in *Lewis* and *Rovella*, continued to represent to the plaintiff, until August 10, 1996, that the general liability policy was in effect until September, 1996.

We now turn to the court's second conclusion that even if the agency relationship did not terminate upon procurement of the Scottsdale policy, as a matter of law, the defendants owed the plaintiff no duty to notify the plaintiff that the policy had been cancelled. In support of this conclusion, the court, citing *Lewis* v. *Michigan Millers Mutual Ins. Co.*, supra, 154 Conn. 664, determined that the defendants could not have breached a duty they owed to the plaintiff by failing to provide it with notice of cancellation of the Scottsdale policy absent a directive or authorization to the broker to do so.

*Lewis* presents facts different from the facts that could be found in this case. In *Lewis*, our Supreme Court held that after a policy was issued and a broker was not authorized or directed by the insured to change the premises covered by a liability policy, the insurance company was not authorized to do so, to the insured's prejudice. Id., 665. In this case, the defendants allegedly repeatedly represented to the plaintiff, until August 10, 1996, that the policy was in effect until September, 1996. The defendants' alleged representations were made directly to the plaintiff, and it cannot be claimed that they were made on the plaintiff's behalf, as the insurance company unsuccessfully claimed in *Lewis*.

Furthermore, the trier reasonably could find that in April, 1996, the defendants advised the plaintiff to discontinue its monthly installment payments to AFCO after the defendants, in September, 1995, had warranted to AFCO that the plaintiff's general liability policy was for fifteen months. As a result, AFCO was not informed that the aggregate amount of the plaintiff's monthly payments made to AFCO was greater than the financed premium for the twelve month policy actually issued by Scottsdale. Because of this, AFCO cancelled the plaintiff's policy, and, because of the defendants' misstatements to the plaintiff, the plaintiff was left with no insurance in August, 1996. We conclude that these circumstances raise genuine issues of material fact with respect to the plaintiff's claims of negligence and breach of contract.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.