LEE DEER ET AL. *v.* NATIONAL GENERAL
INSURANCE COMPANY ET AL.
(SC 21045)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander and Dannehy, Js.

*Syllabus*

The plaintiffs purchased a homeowners insurance policy with a term of one year that was underwritten by an insurance company, N. Co. The plaintiffs procured the policy with the assistance of the defendant insurance brokers, T and his insurance brokerage firm, T Co. Shortly after the policy was issued, a representative of N Co. inspected the plaintiffs' home and found a defect in the exterior siding. N Co. then sent an email to T Co. informing T Co. of this finding and indicating that the plaintiffs were required to repair the defect and to provide notice of the repair no later than three months before the policy was to renew. The parties disputed whether T Co. conveyed this information to the plaintiffs. After not receiving notice of repair by the deadline, N Co. sent another email to T Co., informing it that N Co. had not received notice of repair and that the plaintiffs' policy would not be renewed if notice of repair was not received by the policy expiration date. Approximately four weeks later, and two months before the policy expiration date, N Co. sent a nonrenewal notice to the plaintiffs by certified mail, which the plaintiffs claimed they never received. Ultimately, N Co. never received notice of repair, and the policy did not renew. Shortly after expiration of the policy, the plaintiffs' home was destroyed as a result of an accidental fire. Subsequently, the plaintiffs sought damages from, among others, the defendants, claiming, inter alia, that the defendants had a duty to notify the plaintiffs of communications from N Co., including a nonrenewal notification, but negligently failed to do so. The trial court granted the defendants' motion for summary judgment and rendered judgment thereon, and the plaintiffs appealed to the Appellate Court, which affirmed the trial court's judgment. On the granting of certification, the plaintiffs appealed to this court. *Held*:

The Appellate Court correctly concluded that the defendants did not owe the plaintiffs a duty to provide them with notice of N Co.'s impending nonrenewal of their homeowners insurance policy under the circumstances of this case, and, accordingly, this court affirmed the Appellate Court's judgment.

The general rule is that an insurance broker owes no legal duty to the insured after the broker has successfully procured the requested insurance policy, and a broker is entitled to rely on the insurer to adhere to its statutory and contractual obligations to provide notice of nonrenewal to the insured.

353 Conn. 262 SEPTEMBER, 2025 263

Deer *v.* National General Ins. Co.

An exception to the general rule arises, however, when a broker agrees or gives some affirmative assurance that it will assist in the renewal of an insurance policy for the insured.

In the present case, the agency relationship between the plaintiffs and the defendants terminated after the defendants procured the plaintiffs' policy, as there was no evidence that the defendants had agreed or represented that they would assist in maintaining or renewing the plaintiffs' insurance coverage after the issuance of the policy, and there was no evidence that the defendants had continued to act on the plaintiffs' behalf or affirmatively sought to extend the plaintiffs' coverage by collecting the necessary information to secure a renewal of the plaintiffs' policy.

Moreover, the plaintiffs could not prevail on their claim that a duty should be imposed on the defendants in view of the long-standing, continued, and ongoing relationship between the plaintiffs and the defendants because, although the plaintiffs did have a long-standing relationship with the defendants for many years, that relationship was interrupted for two years prior to the procurement of the policy at issue, as the plaintiffs had utilized another insurance broker during that timeframe, and, in any event, such a long-standing relationship, by itself, is insufficient to create a duty in the absence of evidence that the defendants, through their conduct or communications, had undertaken an additional duty to assist the plaintiffs with their renewals.

(*Two justices dissenting in one opinion*)

Argued April 14—officially released September 9, 2025

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of New London and transferred to the judicial district of Hartford, Complex Litigation Docket, where the court, *Noble, J.*, granted the motions for summary judgment filed by the defendant The Trahan Agency, Inc., et al., denied the plaintiffs' motion for summary judgment and rendered judgment thereon, from which the plaintiffs appealed to the Appellate Court, *Bright, C. J.*, and *Cradle* and *Palmer, Js.*, which affirmed the trial court's judgment, and the plaintiffs, on the granting of certification, appealed to this court. *Affirmed.*

Deer *v.* National General Ins. Co.

*Joseph M. Barnes*, with whom, on the brief, were *Robert I. Reardon, Jr.*, and *Kelly E. Reardon*, for the appellants (plaintiffs).

*Cara D. Joyce*, for the appellees (defendant The Trahan Agency, Inc., et al.).

*Opinion*

D'AURIA, J. The primary issue in this certified appeal is whether an insurance broker has a duty to inform its clients that their homeowners insurance provider intends not to renew their insurance policy. The plaintiffs, Lee Deer and Keleen Deer, appeal from the Appellate Court's judgment affirming the trial court's judgments in favor of the defendants[1] Kevin Trahan and his insurance brokerage firm, The Trahan Agency, Inc.[2] The plaintiffs claim that the Appellate Court incorrectly concluded that their long-standing and special relationship with the defendants failed to create a legal duty that required the defendants to provide them with notice of the impending nonrenewal in this case. We disagree and affirm the judgment of the Appellate Court.

The Appellate Court aptly recited the facts and procedural history needed to resolve this appeal; see *Deer* v. *National General Ins. Co.*, 225 Conn. App. 656, 317

_____

[1] Although National General Insurance Company and Century National Insurance Company were also named as defendants, any claims pertaining to them are not at issue in this appeal. Therefore, we refer to Kevin Trahan and The Trahan Agency, Inc., as the defendants.

[2] "An insurance agent is a person expressly or impliedly authorized to represent an insurance company in its dealings with third persons. . . . An insurance broker is one who acts as a middleman between the insured and insurer and who solicits insurance from the public under no employment from any special company and who either places an order for insurance with a company selected by the insured, or, in the absence of such selection, with a company the broker selects." (Citations omitted; internal quotation marks omitted.) *Lewis* v. *Michigan Millers Mutual Ins. Co.*, 154 Conn. 660, 664, 228 A.2d 803 (1967). As the parties have framed the issue, our opinion focuses on the duties the defendants owed to the plaintiffs as their insurance broker.

Deer *v.* National General Ins. Co.

A.3d 19 (2024); which we summarize along with other undisputed facts in the record. From 2001 through 2017, the defendants were the plaintiffs' insurance brokers and had procured for the plaintiffs a homeowners insurance policy from the Allstate Insurance Company (Allstate), which Allstate renewed fifteen times during that period. From March, 2017, through June, 2019, the plaintiffs used a different insurance brokerage firm to procure their homeowners insurance.

In 2019, the plaintiffs restarted their relationship with the defendants, procuring a homeowners insurance policy that was underwritten by the Century-National Insurance Company (Century-National) for their home in Waterford. The defendants procured the policy through Century-National because Allstate no longer provided homeowners insurance in Connecticut. The policy was effective from June 27, 2019, until June 27, 2020, and provided $361,442 of coverage for the home. Shortly after the policy was issued, a Century-National representative inspected the plaintiffs' home and noticed that a part of the exterior siding was missing.

On July 24, 2019, a Century-National representative sent an email to the defendants' office manager, attaching the inspection results and directing that the plaintiffs needed to repair their missing siding. The email specifically stated: "Please discuss the situation with your insured, as repairs are required as a condition of continued coverage," and required that proof of repair be submitted no later than March 27, 2020.[3] On March 27, 2020, the Century-National representative, in a follow-up email, stated: "We have not received a response regarding the . . . request for repairs . . . [namely]

_____

[3] We disagree with the dissent's characterization of this email as unequivocally manifesting the insurer's intent to "cancel" the existing policy. Part I of the dissenting opinion. The plaintiffs do not make this argument, and, in fact, Century-National did not cancel the policy but instead did not renew it once it had lapsed.

Deer *v.* National General Ins. Co.

[m]issing siding on the exterior walls. Due to not receiving a response the policy has been set to nonrenew. Please submit proof of repairs . . . by the policy expiration date." The parties dispute whether the plaintiffs received any communication from the defendants about the inspection, the necessary repairs, or the risk of nonrenewal in the days leading up to, and after, the expiration of the policy.

On April 19, 2020, Century-National sent a nonrenewal notice to the plaintiffs by certified mail. The notice provided that "[t]his insurance is no longer acceptable due to the inspection report . . . [that] revealed conditions which increase the exposure to loss and prevent your home from meeting underwriting guidelines," and that Century-National had not received proof of compliance with the prior written requests to repair the missing siding. The notice further stated that, "[i]n order to have this notice rescinded we must receive proof that repairs have been completed to the company's satisfaction prior to the [nonrenewal] date" of June 27, 2020. The United States Postal Service (postal service) tried to deliver the notice on April 23, 2020, but left a notice of its attempted delivery, as there was no authorized recipient available. The postal service tried two more times to deliver the certified mail to the plaintiffs' home. After the third unsuccessful attempt, the postal service declared the notice unclaimed and returned it to Century-National on May 6, 2020. The plaintiffs denied receiving the notice of nonrenewal.[4]

Following the nonrenewal notice, the insurance policy expired on June 27, 2020, and Century-National did not renew the plaintiffs' homeowners insurance policy. Weeks later, the plaintiffs' home was destroyed in an

_____

[4] Lee Deer testified at his deposition that he regularly had problems receiving mail because his mailbox was not in the same location as his driveway. The postal service was aware of this confusion and had complained to him about it in the past.

353 Conn. 262 SEPTEMBER, 2025 267

Deer *v.* National General Ins. Co.

accidental fire. The plaintiffs made a claim under the policy, but Century-National denied their claim because the home was not insured at the time of the loss.

The plaintiffs sued the defendants and Century-National for damages stemming from Century-National's decision not to provide coverage for the plaintiffs' destroyed home. The plaintiffs asserted a variety of civil causes of action against the defendants and Century-National,[5] including a common-law negligence claim against the defendants, alleging that they negligently did not inform the plaintiffs that Century-National intended not to renew their policy. The plaintiffs alleged that the defendants had acted as their insurance brokers for several years and that they relied on the defendants to verify that their insurance policies were correct, active, and up to date. The plaintiffs alleged that the defendants breached their duty as their brokers to exercise reasonable diligence in notifying them of Century-National's intention not to renew their policy.

The defendants moved to strike the plaintiffs' negligence claim, arguing that they had no common-law duty to inform the plaintiffs of Century-National's intention not to renew their homeowners insurance policy. The trial court struck the plaintiffs' negligence claim, relying on the general rule in Connecticut that, absent excep-

_____

[5] In a separate action, the plaintiffs claimed that the defendants' conduct had violated the Connecticut Unfair Insurance Practices Act, General Statutes § 38a-815 et seq., and the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The plaintiffs also sued Century-National, alleging that it had failed to comply with the notice requirements of General Statutes § 38a-323 and the notice provisions of the homeowners insurance policy. The trial court rendered judgment in favor of Century-National and the defendants with respect to these claims, and the Appellate Court affirmed. We denied the plaintiffs' petitions for certification to appeal as to those claims. See *Deer* v. *Trahan Agency, Inc.*, 350 Conn. 904, 323 A.3d 345 (2024); *Deer* v. *National General Ins. Co.*, 350 Conn. 903, 323 A.3d 342 (2004). Our opinion, therefore, is limited to the plaintiffs' common-law negligence claim.

Deer *v.* National General Ins. Co.

tional circumstances, a broker becomes an agent of its client when procuring insurance for that client but that the agency relationship ends once the insurance policy is procured. The trial court reasoned that, after the insurance policy successfully has been procured, a broker has no duty to its client to provide an insurance company's notice of nonrenewal. The trial court held that the plaintiffs' allegations—regarding the long-term relationship with the defendants and their reliance on the defendants to ensure that their insurance policies were active and up to date—were routine and therefore did not establish a special circumstance calling for the imposition of a duty.

The plaintiffs filed a substitute complaint in which they reasserted their negligence claim. The plaintiffs alleged in more detail that the defendants had procured for them insurance policies for more than two decades. The plaintiffs alleged that they had built a relationship of trust with the defendants, who would inform them about their insurance and changes to their policies. They alleged that these circumstances created a legal duty requiring the defendants to promptly notify the plaintiffs of communications from an insurance company, including nonrenewal notifications.

The parties filed motions for summary judgment on the plaintiffs' negligence claim. The defendants contended that they were entitled to judgment as a matter of law, again arguing that they had no duty under Connecticut law to notify the plaintiffs of the impending nonrenewal of their policy. The plaintiffs maintained that a duty was created by virtue of the relationship between them and the defendants. Both parties submitted various exhibits supporting their positions. The trial court adopted the analysis it had employed in its prior decision striking the plaintiffs' negligence claim and granted the defendants' motion for summary judgment.

Deer *v.* National General Ins. Co.

The plaintiffs appealed to the Appellate Court, which affirmed the trial court's judgment. See *Deer* v. *National General Ins. Co.*, supra, 225 Conn. App. 701. The Appellate Court recited the general rule that, absent exceptional circumstances, an insurance broker has no continuing legal duty after the procurement of coverage to do anything that affects the client. See id., 690. The Appellate Court held that the plaintiffs' summary judgment exhibits did not raise a genuine issue of material fact as to the existence of exceptional circumstances extending the agency relationship between the parties after the procurement of the policy on June 27, 2019. See id., 694. The Appellate Court also specifically noted that there was no evidence that the plaintiffs had asked, the defendants had represented, or the parties had ever discussed that the defendants would procure for the plaintiffs insurance coverage for a period of time beyond the expiration of the policy on June 27, 2020. See id. This certified appeal followed.

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . Contained within the first element, duty, there are two distinct considerations. . . . First, it is necessary to determine the existence of a duty, and [second], if one is found, it is necessary to evaluate the scope of that duty. . . . We sometimes refer to the scope of that duty as the requisite standard of care." (Internal quotation marks omitted.) *Osborn* v. *Waterbury*, 333 Conn. 816, 825, 220 A.3d 1 (2019). "[T]he existence of a legal duty is a question of law over which we exercise plenary review." (Internal quotation marks omitted.) *Gonzalez* v. *O & G Industries, Inc.*, 341 Conn. 644, 680, 267 A.3d 766 (2021); see also *Iacurci* v. *Sax*, 313 Conn. 786, 796, 99 A.3d 1145 (2014) (existence of duty often turns on unique facts presented in record but fact driven nature of question

Deer *v.* National General Ins. Co.

of law does not transform legal question into factual question).

"When procuring insurance for a person . . . a broker becomes the agent of that person for that purpose." *Lewis* v. *Michigan Millers Mutual Ins. Co.*, 154 Conn. 660, 664, 228 A.2d 803 (1967). An insurance broker "owes a duty to his principal to exercise reasonable skill, care, and diligence in effecting the insurance, and any negligence or other breach of duty on his part which defeats the insurance which he undertakes to secure will render him liable to his principal for the resulting loss. . . . Where he undertakes to procure a policy affording protection against a designated risk, the law imposes upon him an obligation to perform with reasonable care the duty he has assumed, and he may be held liable for loss properly attributable to his default." (Citation omitted.) *Ursini* v. *Goldman*, 118 Conn. 554, 559, 173 A. 789 (1934). "Once that purpose is accomplished, however, and the insurance is procured, the agency relationship between the insured and the broker terminates, and the broker is without any authority to do anything which further affects the insured unless expressly or impliedly authorized by the insured to do so." *Lewis* v. *Michigan Millers Mutual Ins. Co.*, supra, 664; see also 3 S. Plitt et al., Couch on Insurance (3d Ed. Rev. 2011) § 44:36, pp. 44-50 through 44-51 ("An agency for the insured may terminate by the completion of the act that the agency was created to accomplish. For example, the agency of a broker employed to procure a particular insurance ceases when that insurance has been procured."); B. Weimer et al., Law of Commercial Insurance Agents and Brokers (2007) § 5:3 [D], p. 5-23 ("[t]he existence of a broker-client relationship, by itself, does not establish that the broker owes affirmative duties").

Accordingly, the established general rule is that an insurance broker owes no legal duty to the insured after

353 Conn. 262 SEPTEMBER, 2025 271

Deer *v.* National General Ins. Co.

the broker has successfully procured the requested policy. See *Lewis* v. *Michigan Millers Mutual Ins. Co.*, supra, 154 Conn. 664; *Rovella* v. *Standard Accident Ins. Co.*, 121 Conn. 134, 138, 183 A. 377 (1936); *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, 109 Conn. App. 560, 570, 952 A.2d 818, cert. denied, 289 Conn. 940, 959 A.2d 1007 (2008); see also *Reyes* v. *Nautilus Ins. Co.*, Docket No. CV-10-6013254-S, 2012 WL 1004302, *13 (Conn. Super. March 6, 2012) (citing Superior Court decisions holding that brokers have no duty to insured after insurer issues policy). "An insurance policy that renews or replaces a prior policy is a separate and distinct contract, such that an agreement by the [broker] to procure a new policy is a prerequisite to liability. Absent the broker's agreement to arrange the renewal or replacement of a policy, the broker has no duty to continue coverage for the insured. . . . If the insured's policy expires or is cancelled and a later loss is thus uninsured, the . . . broker who procured the policy is in no way liable." (Footnotes omitted.) 1 J. Thomas & F. Mootz III, New Appleman on Insurance Law Library Edition (2011) § 2.05 [4], pp. 2-47 through 2-48; see, e.g., *Faulkner* v. *Gilmore*, 251 Ill. App. 3d 34, 38, 621 N.E.2d 908 (1993) (broker no longer owes duty once limited purpose of broker's agency is accomplished); *Hecker* v. *Missouri Property Ins. Placement Facility*, 891 S.W.2d 813, 817 (Mo. 1995) (insurance agent owed no duty to insureds after informing them he would not submit application to renew policy); *Williams* v. *Prudential Financial, Inc.*, 138 App. Div. 3d 643, 644, 31 N.Y.S.3d 34 (broker had no duty in connection with policy renewal absent agreement to keep policy in force), appeal denied, 28 N.Y.3d 911, 69 N.E.3d 1023, 47 N.Y.S.3d 227 (2016); see also *Admiral Ins. Co.* v. *Cresent Hills Apartments*, 328 F.3d 1310, 1312 (11th Cir. 2003) (insurance agency had no duty to notify insured of insurer's attempt to cancel policy).

Deer *v.* National General Ins. Co.

The primary rationale supporting this general rule is that it is the insurer's statutory and contractual obligation to notify an insured that the insurer intends not to renew the policy it had issued. Many states, including Connecticut, have statutes mandating that an insurer provide notice to the insured of its intention not to renew a policy. See footnote 5 of this opinion; see also General Statutes § 38a-323 (a) (1); *Pacific Rim Mechanical Contractors, Inc.* v. *Aon Risk Ins. Services West, Inc.*, 203 Cal. App. 4th 1278, 1284, 138 Cal. Rptr. 3d 294 (2012); *Kotlar* v. *Hartford Fire Ins. Co.*, 83 Cal. App. 4th 1116, 1123, 100 Cal. Rptr. 2d 246 (2000), review denied, California Supreme Court, Docket No. S092700 (January 24, 2001); *Collins* v. *State Farm Ins. Co.*, 160 So. 3d 987, 994 (La. App. 2015). Additionally, insurance policies, like the one at issue, often contain notice provisions requiring insurers to inform the insureds that their coverage will no longer be effective. See footnote 5 of this opinion; see also *Westmoreland* v. *General Accident Fire & Life Assurance Corp., Ltd.*, 144 Conn. 265, 270, 129 A.2d 623 (1957); *Slovak* v. *Adams*, 141 Ohio App. 3d 838, 845, 753 N.E.2d 910 (2001). Ordinarily, a broker is justified in relying on the insurer, following the insurer's statutory and contractual obligations, to provide notice to the insured. See, e.g., *Rovella* v. *Standard Accident Ins. Co.*, supra, 121 Conn. 138; *Wood* v. *State Farm Fire & Casualty Co.*, Docket Nos. 2019-CA-000462-MR and 2019-CA-000463-MR, 2020 WL 1898401, *5 (Ky. App. April 17, 2020); *Isaacson* v. *DeMartin Agency, Inc.*, 77 Wn. App. 875, 881, 893 P.2d 1123 (1995). Because these notice provisions require an insurer to provide notice to the *insured*, not the insured's broker of record, in some instances, the broker might lack information about the policy to communicate with the insured.

An exception to this general rule arises when a broker agrees, or gives some affirmative assurance, that it will assist in the renewal of an insurance policy for the

353 Conn. 262    SEPTEMBER, 2025    273

Deer *v.* National General Ins. Co.

insured.[6] See, e.g., *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.,* supra, 109 Conn. App. 568–69; see also *Cronin* v. *Washington National Ins. Co.,* 980 F.2d 663, 669 (11th Cir. 1993); *Indiana Restorative Dentistry, P.C.* v. *Laven Ins. Agency, Inc.,* 27 N.E.3d 260, 266–67 (Ind. 2015); *Trinity Universal Ins. Co.* v. *Burnette,* 560 S.W.2d 440, 444 (Tex. Civ. App. 1977). "Insurance policies expire by their own terms and must be renewed. Generally, the insurer deals directly with the insured to renew coverage, but sometimes the broker who placed the coverage is involved in the renewal process." 1 J. Thomas & F. Mootz III, supra, § 2.05 [4], p. 2-47. Although a broker does not have to assist with a renewal, "once the [broker] undertakes this task, the [broker] must exercise the level of skill, care and diligence appropriate under the circumstances for one in the field." *Golden Rule Ins. Corp.* v. *Greenfield,* 786 F. Supp. 914, 916 (D. Colo. 1992); see also *Holborn Corp.* v. *Sawgrass Mutual Ins. Co.,* 304 F. Supp. 3d 392, 405 (S.D.N.Y. 2018) (exception for special relationship between broker and customer is narrow so as to not swallow general rule).

By accepting the obligation to maintain insurance coverage or to renew a policy, a broker has "the duty to notify the applicant if the insurer declines to continue [to insure] the risk, so the applicant may not be lulled into a feeling of security or put to prejudicial delay in seeking protections elsewhere." (Internal quotation marks omitted.) *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.,* supra, 109 Conn. App. 566;[7]

---

[6] The parties may expressly contract for additional monitoring or advising services; see generally B. Weimer et al., supra, § 5:3, pp. 5-13 through 5-45; or the insured can provide a broker with compensation that is greater than an ordinary commission for those services. See, e.g., *Sawyer* v. *Rutecki,* 92 App. Div. 3d 1237, 1237, 937 N.Y.S.2d 811, appeal denied, 19 N.Y.3d 804, 970 N.E.2d 431, 947 N.Y.S.2d 408 (2012). Neither of these circumstances is at issue in this case.

[7] The plaintiffs and the dissent take this quotation from *Precision Mechanical Services, Inc.,* out of context. The full quotation, which is from *Lazzara* v. *Howard A. Esser, Inc.,* supra, 802 F.2d 266, provides: "[I]n the case of a

Deer *v.* National General Ins. Co.

see also *Lazzara* v. *Howard A. Esser, Inc.*, 802 F.2d 260, 266 (7th Cir. 1986); B. Weimer et al., supra, § 5:3 [D], p. 5-19 ("[a] broker must give the insured prompt notice if the correct coverage is not obtained, and take appropriate measures to protect the insured's interests in such a situation"). To decide whether a broker has undertaken a duty to assist with renewal, a court must consider the conduct of and the communications between the parties and, more specifically, "the extent to which they indicate that the [broker] has acknowledged an obligation to secure a policy." (Internal quotation marks omitted.) *Barnett* v. *Security Ins. Co. of Hartford*, 84 N.C. App. 376, 378, 352 S.E.2d 855 (1987); see also *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, supra, 570.

Under the present circumstances, we agree with the Appellate Court that the agency relationship between the parties terminated after the defendants had procured the plaintiffs' insurance policy in June, 2019. The defendants owed no duty to inform the plaintiffs of the information they had received regarding the renewal because the defendants did not agree to maintain or renew

___

*broker who has agreed to seek renewal of a policy*, it is immaterial whether the insurer would renew the policy. Inherent in the *obligation to seek continuation of an insurance policy* is the duty to notify the applicant if the insurer declines to continue [to insure] the risk, so the applicant may not be lulled into a feeling of security or put to prejudicial delay in seeking protection elsewhere." (Emphasis added; internal quotation marks omitted.) Id.; see *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, supra, 109 Conn. App. 566. Thus, *Precision Mechanical Services, Inc.*, does not stand for the proposition that a broker always and under all circumstances has a duty to notify an insured of an insurer's intention not to renew a policy. Instead, that duty arises when a broker extends his agency relationship and accepts an obligation to ensure continued coverage. Moreover, the notice provided by the insurer to the defendants indicated its intent to offer continued coverage, not to cancel the policy. See footnote 2 of this opinion. On this record, which we read in the light most favorable to the plaintiffs, we cannot conclude that the defendants undertook the obligation to extend their agency so as to come within the exception to the general rule that their duty terminated along with its agency.

Deer *v.* National General Ins. Co.

the plaintiffs' insurance coverage. It is undisputed that the defendants successfully procured the plaintiffs home-owners insurance, effective from June 27, 2019, until June 27, 2020. The plaintiffs provided no evidence in opposition to summary judgment to show that the defendants had agreed or represented that they would assist in maintaining or renewing that coverage one year later. There was no evidence that the parties met, discussed, or otherwise corresponded during the policy year with respect to the policy's renewal. Indeed, Lee Deer testified that he could not recall any conversations with the defendants during 2019 or 2020, and he specifically denied that the defendants had left him several voice-mails prior to the nonrenewal or had any conversations with him about the potential nonrenewal. Keleen Deer testified that she had not spoken with any of the defendants' employees since 2019 and did not contact them after they had procured the Century-National policy in June, 2019.

Moreover, there was no evidence that the defendants continued to act on the plaintiffs' behalf or affirmatively sought to extend the plaintiffs' coverage by collecting the necessary information to obtain a renewal. Lee Deer testified that he did not know whether there was any specific action that he or his wife had asked the defendants to take. There also was no evidence that the defendants had informed the plaintiffs that they would assist with the renewal, that they had provided the plaintiffs with renewal quotes, or that the defendants had assured them that their policy would renew or remain in effect beyond its effective date. In short, the plaintiffs direct us to no evidence showing that the defendants specifically agreed or indicated that they would renew the 2019 policy. See, e.g., *Collegiate Mfg. Co.* v. *McDowell's Agency, Inc.*, 200 N.W.2d 854, 858 (Iowa 1972) (plaintiff's subjective expectations are insufficient to create duty absent

Deer *v.* National General Ins. Co.

express or implied agreement to assume duty beyond ordinary relationship).

The plaintiffs nevertheless contend that the defendants undertook a duty by trying, unsuccessfully, to inform them of Century-National's intention not to renew the policy several days before, and several days after, the policy's expiration. But even if the defendants in fact attempted to inform the plaintiffs of Century-National's intent by leaving them voicemails, which the plaintiffs adamantly deny occurred, that attempted notification falls well short of the defendants' agreement to ensure continued insurance coverage. See, e.g., *Harris* v. *Albrecht*, 86 P.3d 728, 733 (Utah 2004) (no duty for broker to procure coverage despite preliminary discussion about plaintiff's need for insurance); see also *Alford* v. *Tudor Hall & Associates, Inc.*, 75 N.C. App. 279, 283, 330 S.E.2d 830 (same), review denied, 315 N.C. 182, 337 S.E.2d 855 (1985). The plaintiffs further argue that Century-National perceived an existing, ongoing relationship between the plaintiffs and the defendants because it referred to the plaintiffs as the defendants' "insured[s]" in its July 24, 2019 email about the inspection results. But the phrasing Century-National used in its correspondence is insufficient to revive the terminated agency relationship between the defendants and the plaintiffs. The focus of the duty inquiry is on the conduct and communications between the parties; see, e.g., *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, supra, 109 Conn. App. 570; not on the perspective of a third party who lacks any knowledge of the scope of that relationship.

The plaintiffs additionally maintain that a duty should be imposed on the defendants as a result of the longstanding, continued, and ongoing relationship between the parties.[8] The plaintiffs contend that the defendants

---

[8] The plaintiffs further rely on their standard of care expert's opinion that all brokers have a duty to inform their insureds of a nonrenewal. We agree with the Appellate Court that this expert opinion does not constitute evi-

353 Conn. 262　　SEPTEMBER, 2025　　　277

Deer *v.* National General Ins. Co.

had procured insurance policies for them from 2001 through 2020, and that this series of actions created a duty to advise them of known problems with or lapses in continued insurance coverage. The problem for the plaintiffs is that their relationship with the defendants was no longer long-standing, continued, or ongoing. It is undisputed that the defendants had procured insurance policies for the defendants for sixteen years between 2001 and 2017. It also is undisputed, however, that the plaintiffs ended that relationship in March, 2017, when they decided to use another insurance brokerage firm to procure insurance for them. The plaintiffs restarted their relationship with the defendants, asking that they procure a *new* homeowners insurance policy in June, 2019. But cf. *101 Ocean Blvd.*, *LLC* v. *Foy Ins. Group*, *Inc.*, 174 N.H. 130, 134, 261 A.3d 250 (2021) (jury properly found extended agency relationship when broker provided unsolicited advice about amounts and types of coverage to insured for more than nine uninterrupted years). By that time, the defendants were no longer contractually obligated to Allstate to sell only Allstate homeowners insurance policies, and the defendants were still only in their first year of the new relationship with the plaintiffs after procuring for them an insurance policy with Century-National.

Even if the parties had a continued and long-standing relationship, the length of that relationship alone is insufficient to create an extended agency relationship. Critically, in cases finding the existence of an extended agency relationship, the record contains evidence that the broker consistently had participated in the renewal process or had taken some affirmative action with respect to renewal of the policy it had procured. See,

dence that can impose a legal duty on the defendants. See *Deer* v. *National General Ins. Co.*, supra, 225 Conn. App. 691 n.22. Instead, as we explain, the inquiry of whether a broker has a duty in this context is contingent on the specific conduct of and communications between the parties.

Deer *v.* National General Ins. Co.

e.g., *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, supra, 109 Conn. App. 567, 570 (broker continued to act on insured's behalf after issuance of policy by seeking amendment and discussing renewal with insured); *Indiana Restorative Dentistry, P.C.* v. *Laven Ins. Agency, Inc.*, supra, 27 N.E.3d 266 (broker met with insured three to four times per year and completed same "annual policy renewal ritual," including soliciting information for renewal application); *McCue* v. *Prudential Ins. Co. of America*, 371 Mass. 659, 661– 62, 358 N.E.2d 799 (1976) (continuing relationship existed for twenty-eight years during which agents made monthly visits to plaintiffs to attend to their insurance needs); *Martinonis* v. *Utica National Ins. Group*, 65 Mass. App. 418, 420, 422, 840 N.E.2d 994 (2006) (broker assumed additional duties during nearly decade long relationship by regularly providing insured with advice); *Trinity Universal Ins. Co.* v. *Burnette*, supra, 560 S.W.2d 442–43 (brokerage firm always renewed policies for plaintiffs or notified them when policies were not renewed); see also *Cronin* v. *Washington National Ins. Co.*, supra, 980 F.2d 669 (broker assumed duty by contacting insured before each of her other three policies expired, and had solicited her renewal application).

In the present case, although the defendants had procured for the plaintiffs an Allstate homeowners insurance policy in 2001, the plaintiffs provided no evidence in opposition to summary judgment to demonstrate that the defendants had assisted them with the renewal process between 2001 and 2017, or that the defendants previously had communicated renewal information to the plaintiffs. As we have explained, to satisfy the exception to the general rule that no duty exists, a plaintiff must discover and present evidence that a broker has accepted the obligation to maintain insurance coverage or to renew a policy. Thus, even if the plaintiffs had

Deer *v.* National General Ins. Co.

a continuous and ongoing relationship, they failed to present any evidence to show that the defendants, through their conduct or with communications by the plaintiffs, had undertaken an additional duty between 2001 and 2017 to assist them with the renewals. See, e.g., *Peerless Ins. Co.* v. *Gonzalez*, 241 Conn. 476, 488, 697 A.2d 680 (1997) (summary judgment properly rendered for insurer because defendant failed to present evidence as to insurer's past practice). Moreover, although the defendants had been contractually obligated to sell only Allstate homeowners insurance policies when they procured the plaintiffs' 2001 policy, the defendants were procuring policies from different homeowners insurance providers when the plaintiffs returned in 2019. The imposition of a duty based solely on the length of a broker-insured relationship, without evidence regarding the nature of that relationship, is unwarranted. See, e.g., *Lisa's Style Shop, Inc.* v. *Hagen Ins. Agency, Inc.*, 181 Wis. 2d 565, 570, 573, 511 N.W.2d 849 (1994) (broker owed no duty because, although six year relationship was long, parties rarely spoke and insured did not seek broker's assistance); see also *BioChemics, Inc.* v. *AXIS Reinsurance Co.*, 277 F. Supp. 3d 251, 256 (D. Mass. 2017) (no duty when broker worked annually to obtain insurance and never was asked to provide, or actually provided, insurance advice). In sum, we are not persuaded by the plaintiffs' attempt under these circumstances to impose a duty on the defendants to inform the plaintiffs of an impending nonrenewal.

We are sympathetic to the plaintiffs' situation, having lost their home without insurance coverage to replace it. "While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree. . . . In

every case in which a defendant's negligent conduct may be remotely related to a plaintiff's harm, the courts must draw a line, beyond which the law will not impose legal liability.'' (Citation omitted; internal quotation marks omitted.) *Lawrence* v. *O & G Industries, Inc.*, 319 Conn. 641, 666–67, 126 A.3d 569 (2015); see id., 667 (construction companies owed no duty to workers employed on job site who suffered economic harm); see also *Karas* v. *Liberty Ins. Corp.*, 335 Conn. 62, 109, 228 A.3d 1012 (2019) (recognizing that its holding would result in lack of insurance coverage for plaintiffs and many homeowners statewide). As it concerns the issue of nonrenewing policies, the legislature has seen fit to limit the obligation (and therefore the liability) of the insurance companies themselves, which only have to send notice of nonrenewal and do not need to prove actual receipt or actual notice. See General Statutes § 38a-323 (a) (1). The legislature could, of course, impose such a duty on brokers to provide notice of an insurer's intention not to renew a policy if, in the legislature's judgment, such a duty is warranted. In the absence of legislative action, however, we decline to create a new legal duty.

The dissent opposes our resolution of this case by challenging the basis of the general rule that an agency relationship terminates once its purpose is accomplished, which is supported by more than 100 years of bedrock agency principles. See, e.g., *Cheshire Brass Co.* v. *Wilson*, 86 Conn. 551, 557–58, 86 A. 26 (1913). The plaintiffs do not ask us to deviate from traditional agency principles, and they rely on the agency relationship between the parties to support their theory of liability. This case, as it did before the trial court and the Appellate Court, turns on the application of the *exception* to that general rule under the present circumstances. This narrow exception has been incorporated into the common law, in this state and across the country, to hold brokers liable for their negligent performance of responsibilities that

Deer *v.* National General Ins. Co.

they have agreed to accomplish. The rationale for this legal framework, which the dissent claims is nonexistent, is the core agency principle that an agent is liable only for the specific tasks he undertakes. See id.; see also *Ursini* v. *Goldman*, supra, 118 Conn. 559.[9] As we have explained, the exception may be satisfied in a future case when there is supporting evidence. The plaintiffs in the present case, however, expressly denied ever communicating with the defendants after the procurement of their policy, and they failed to show that the defendants had assisted them with any prior renewal. Accordingly, the plaintiffs failed to show that their case comes within that exception.

Unlike the plaintiffs, the dissent contends that we should not blindly adhere to the traditional agency rule. See part II of the dissenting opinion. We do not abide by our precedent merely because it always has been the law. Rather, for the reasons we have explained, we are persuaded that the creation of a duty beyond our precedent under these circumstances is unwarranted. Moreover, we are not as confident as the dissent that we are up to date on the "changes in" or the "evolution of the insurance industry," or that we understand fully "the gap between ordinary business practices and the law" such that we are ready to modify the common law, as the dissent would have us do in this case. Id. Undermining the argument that a continuous relationship is the industry standard is the fact that the plaintiffs in this case had previously ended their relationship with the defendants and left for a different insurance brokerage firm. A remedy for a broker's negligent performance of acts it did not agree to perform is more appropriately

_____

[9] The dissent's proposed legal standard, requiring a broker to make sure that an insured actually receives every notice that a broker has knowledge of—regardless of whether the insured is the broker's client presently, one year ago, or twenty years ago—is not supported by precedent and, at any rate, is untenable.

Deer *v.* National General Ins. Co.

created by the legislature because, as the dissent accurately notes, "Connecticut heavily regulates and licenses insurance agents. See General Statutes § 38a-702a et seq." Part II of the dissenting opinion.

The judgment of the Appellate Court is affirmed.

In this opinion MULLINS, C. J., and ALEXANDER and DANNEHY, Js., concurred.

McDONALD, J., with whom ECKER, J., joins, dissenting. Connecticut courts have long held that an insurance broker's role as their client's agent ends once the broker successfully procures the client's requested policy. See, e.g., *Cheshire Brass Co.* v. *Wilson*, 86 Conn. 551, 557, 86 A. 26 (1913); see also, e.g., *Lewis* v. *Michigan Millers Mutual Ins. Co.*, 154 Conn. 660, 664, 228 A.2d 803 (1967). See generally 3 S. Plitt et al., Couch on Insurance (3d Ed. Rev. 2011) § 44:36, pp. 44-50 through 44-51. As the Appellate Court observed and discussed, from this general rule, courts have also concluded that, once an agent's agency relationship with an insured ends, the agent's duties to the insured also end, unless special circumstances exist that would impose an ongoing duty on the agent. See *Deer* v. *National General Ins. Co.*, 225 Conn. App. 656, 690–93, 317 A.3d 19 (2024). Here, the majority concludes, based on the application of this general rule that an agency relationship ends once the policy is procured, that an insurance agent has no duty to notify their insured that the insured's policy is at risk of being canceled.

I disagree and write separately for two reasons. First, I would conclude that an insurance agent's duty to "exercise reasonable skill, care, and diligence in effecting the insurance [policy]"; *Ursini* v. *Goldman*, 118 Conn. 554, 559, 173 A. 789 (1934); does not end once the policy is procured. Instead, an insurance agent has an ongoing "duty to notify the [insured] if the insurer declines to

Deer *v.* National General Ins. Co.

continue [to insure] the risk'' or threatens to do so. (Internal quotation marks omitted.) *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, 109 Conn. App. 560, 566, 952 A.2d 818, cert. denied, 289 Conn. 940, 959 A.2d 1007 (2008); see also id. ("[a]n agent or broker cannot sit idly with a cancellation notice or information, but must seasonably inform the insured client thereby giving the client sufficient time to obtain protect[ion] with another insurer'' (internal quotation marks omitted)). Second, I believe that it is long past time that this court reexamine our case law that applies an antiquated understanding of the agency relationship that exists between an insurance agent and an insured, which has not kept pace with the evolution of the insurance industry. Accordingly, I respectfully dissent.

The record, viewed in a light most favorable to the plaintiffs, Lee Deer and Keleen Deer, reveals the following facts and procedural history. At the request of the Deers, the defendant The Trahan Agency, Inc. (Trahan), a captive Allstate Insurance Company agent,[1] procured a homeowners insurance policy underwritten by Century-National Insurance Company. The Deers' policy began on June 27, 2019, and would last through June 27, 2020. They had long been customers of Allstate, having first purchased a homeowners insurance policy from Allstate through Trahan's predecessor agent in 2001. The Deers renewed their Allstate homeowners insurance policy fifteen times, ending their relationship with Allstate when they purchased a homeowners insurance policy through another agent and insurer that provided coverage from March, 2017, through June, 2019. Although Trahan was a captive Allstate agent, Allstate had stopped underwriting homeowners insurance policies in Connecticut. Allstate, however, created an expanded

---

[1] A "captive" insurance agent is an agent that is authorized to sell insurance policies from only one insurance company. See *Deer* v. *National General Ins. Co.*, supra, 225 Conn. App. 699.

Deer *v.* National General Ins. Co.

insurance program, which allowed captive Allstate agents to sell homeowners insurance policies underwritten by other insurers that Allstate had selected. Because Trahan signed onto Allstate's expanded insurance program, it was authorized to sell homeowners insurance policies underwritten by Century-National to Connecticut residents.

Shortly after Trahan procured the Deers' homeowners insurance policy, which was underwritten by Century-National, Jessica Perry, Trahan's office manager, informed Lee Deer that a house inspection may be required. Century-National hired a third party to conduct an inspection of the house, but the Deers did not know that it had ever taken place. Vanessia Babbitt, a Century-National representative, emailed the inspection results only to Perry. Babbitt explained that the Deers' house was "[m]issing siding on [the] exterior walls" and "is in need of repair . . . ." Babbitt further instructed Perry to "discuss the situation with your insured, as repairs are required as a condition of continued coverage." Finally, she requested that Perry inform the Deers that "[p]roof of repair is required . . . [n]o later than [March 27, 2020]," which was three months prior to the time that the Deers' annual policy was automatically set to renew.

Perry did not provide the inspection results to the Deers or inform them that they needed to send proof of repairs to Century-National to ensure continued insurance coverage. Consequently, the Deers did not respond to Century-National by March 27, 2020, with proof of repairs. Babbitt again emailed Perry to explain that, because Century-National had "not receiv[ed] a response [by March 27, 2020], the policy ha[d] been set to nonrenew." The email also implied that Perry should inform the Deers that their policy, which had now been set to nonrenew, could be renewed if the Deers "submit-[ted] proof of repairs . . . by the policy expiration

Deer *v.* National General Ins. Co.

date.'' Perry again failed to notify the Deers that they needed to send proof of repairs to Century-National as a condition of continued coverage.

Unsurprisingly, the Deers never sent proof of repairs to Century-National. Trahan claims that it notified the Deers of the inspection results and impending nonrenewal. The Deers claim that Trahan never notified them of the inspection results, that repairs were required as a condition for continuing coverage, or that their policy would not automatically renew if they failed to timely send proof of the repairs. Because Trahan failed to notify the Deers of the potential nonrenewal of their insurance policy, the Deers, apparently, instead operated on the assumption that their policy was set to automatically renew on June 27, 2020, just as their prior Allstate homeowners insurance policies had renewed fifteen times upon payment of the premium.[2] To make matters worse, because of an oddity with the Deers' mailbox location, the Deers also did not receive actual notice from Century-National that their homeowners insurance policy was not automatically renewing on June 27, 2020. See General Statutes § 38a-323 (a) (1) (requiring insurers to notify insureds of intent to terminate insurance policy at least sixty days prior to policy nonrenewal). To summarize, we must accept, at the summary judgment stage, that the Deers themselves had no reason, at any time, to believe that their homeowners policy was at risk of either cancellation or nonrenewal.

Shortly after the Deers' policy expired, an accidental fire destroyed their house. While the house was still

[2] There is nothing in the record that reflects whether the Deers paid the premium for the renewal that did not occur. However, the second email that Century-National sent to Trahan indicated that Century-National set the Deers' policy to nonrenew after they did not respond to the inspection results, which is contrary to the prior automatic policy renewals that had occurred in the Deers' fifteen prior policies.

Deer *v.* National General Ins. Co.

hot with embers, Lee Deer called Allstate to begin the claims process. Lee Deer believed that he had an active homeowners insurance policy with Allstate because he had purchased his homeowners insurance policy through Trahan, a captive Allstate agent. When he discovered that Allstate had not underwritten a policy for him, he attempted to contact Perry by phone during the next few hours. After learning about Lee Deer's attempts to reach her, but before responding to him, Perry called Century-National to ask about the status of the Deers' policy. Century-National informed Perry that the Deers' did not have an active homeowners insurance policy because their prior policy was not renewed. Perry then called Lee Deer to tell him that he no longer had homeowners insurance coverage. The next week, Perry responded to Babbitt's prior emails about the inspection results by forwarding a copy of Century-National's nonrenewal notice that Trahan received but that the Deers claim they never received. One Century-National employee interpreted Perry's email as Trahan's attempt to "[cover] themselves . . . ."

The Deers argue that Trahan had a duty to notify them of the inspection results, the conditions for continuing coverage, and the subsequent nonrenewal that resulted from the Deers' failure to comply with the conditions for continuing coverage. They argue that the general rule that an insurance agent's duties to an insured end once a policy is procured should not be understood to categorically preclude an agent's liability in all circumstances. I agree and conclude that, under these circumstances, Trahan had a duty to notify the Deers of the potential cancellation or nonrenewal of their policy. Because this case highlights the antiquated manner in which our case law addresses the relationship between an insurance agent and an insured, I also believe that this court's rote application of centuries old case law must be reexamined.

Deer *v.* National General Ins. Co.

I

I begin with the question of whether Trahan owed a duty to the Deers under our existing law. An insurance agent "owes a duty to his principal to exercise reasonable skill, care, and diligence in effecting the insurance [policy], and any negligence or other breach of duty on his part [that] defeats the insurance [policy that] he undertakes to secure will render him liable to his principal for the resulting loss." *Ursini* v. *Goldman*, supra, 118 Conn. 559. This court, like many others, has long held that, once an agent procures an insurance policy for their client, the "general rule" is that the agent "ceases to be the agent of the insured . . . ." *Cheshire Brass Co.* v. *Wilson*, supra, 86 Conn. 557, citing *Hermann* v. *Niagara Fire Ins. Co.*, 100 N.Y. 411, 415, 3 N.E. 341 (1885); see also, e.g., *Lewis* v. *Michigan Millers Mutual Ins. Co.*, supra, 154 Conn. 664. Courts have also concluded that, as a general matter, once the agency relationship ends—which traditionally has been taken to mean once the agent procures the requested insurance policy—an insurance agent's duties to the insured end, unless special circumstances apply. See, e.g., *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, supra, 109 Conn. App. 565; see also, e.g., *Certain Interested Underwriters at Lloyd's, London* v. *Bear, LLC*, 260 F. Supp. 3d 1271, 1282 (S.D. Cal. 2017), aff'd, 796 Fed. Appx. 372 (9th Cir. 2019); cf. *AGA Fishing Group Ltd.* v. *Brown & Brown, Inc.*, 533 F.3d 20, 23 (1st Cir. 2008) (discussing effect special circumstances may have on insurance agent's duty to insured); *Farm Credit Midsouth, PCA* v. *Bollinger*, 548 S.W.3d 164, 176 (Ark. App. 2018) (same). See generally 3 S. Plitt et al., supra, § 46:38, pp. 46-84 through 46-93.

As a preliminary matter, I disagree with the majority that this general rule, which cuts off an insurance agent's liability to their insured once they procure the initial policy, applies under these circumstances. A survey of cases across jurisdictions indicates that this rule

Deer *v.* National General Ins. Co.

clarifies that, as the insured's agent, an insurance agent has no ongoing duty to advise an insured regarding future policy needs, to inform the insured of the need for coverage in addition to that which the insured had requested and that the agent had already procured, or to act on the insured's behalf to procure such policies. See, e.g., *Lewis* v. *Michigan Millers Mutual Ins. Co.*, supra, 154 Conn. 664; *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, supra, 109 Conn. App. 565; *Baldwin Crane & Equipment Corp.* v. *Riley & Rielly Ins. Agency, Inc.*, 44 Mass. App. 29, 31–32, 687 N.E.2d 1267 (1997), review denied, 427 Mass. 1101, 692 N.E.2d 963 (1998); *Lincoln Life & Annuity Co. of New York* v. *Wittmeyer*, 211 App. Div. 3d 1564, 1569, 182 N.Y.S.3d 421 (2022). Stated otherwise, the rule limits a broker's duties to the policy or policies that the insured expressly or impliedly authorized the broker to procure as the insured's agent. See, e.g., *Lewis* v. *Michigan Millers Mutual Ins. Co.*, supra, 664. Under the general rule, then, an agent's duties do not extend to additional, amended or future policies.

This case does not fit within the scope of this general rule. The Deers do not claim that Trahan had a duty to *procure* another insurance policy or to *advise* them about additional coverage needs; rather, they contend that Trahan had a duty to notify them of material information about the existing policy procured by Trahan on behalf of the Deers that jeopardized the continuation of coverage for which Trahan had received its full commission. They claim that Trahan had a duty to notify them that, because of the inspection results, the Deers needed to repair their siding, and that, if they failed to do so in a timely manner, their insurance coverage would be terminated.[3] But the general rule that a bro-

---

[3] The Deers argue that Trahan had a duty to "ensur[e] that coverage [did] not lapse, cancel, or nonrenew. This duty include[d] timely and properly communicating with [the Deers] to advise [them] of known problems with, or lapses in, continued insurance coverage."

Deer *v.* National General Ins. Co.

ker's duties end once the policy is procured does not apply when determining whether a broker had a duty in a situation in which the broker learned of information that would defeat the purpose of an insured's existing policy. See, e.g., *Ursini* v. *Goldman*, supra, 118 Conn. 559. Accordingly, I do not think that the general rule should guide this court's inquiry under these particular circumstances.

The majority largely frames the issue as a dispute about whether Trahan owed a duty to notify the Deers about the need to renew their policy. Although the Deers do claim that the duties owed to them by Trahan extended to renewing the policy, they also argue that Trahan's duties included a duty to inform them of issues related to the then existing policy. On the facts of this case, in other words, the question of whether Trahan owed a duty to the Deers with respect to the renewal of their policy (i.e., to procure a new policy) is inextricably intertwined with the question of whether Trahan owed them an ongoing duty with respect to the policy it had already procured for them, and that was in effect, when Century-National had sent its first email about the inspection results. In my opinion, the majority relies on an artificial, bright-line distinction between cancellation and nonrenewal that cannot be maintained under the circumstances of this case. The majority's analysis largely avoids the duty inquiry with respect to the ongoing viability of the policy that was procured by Trahan within the scope of its agency, and for which it was compensated.

Regarding an agent's duty with respect to an insured's existing policies, an insurance agent "owes a duty to his [insured] to exercise reasonable skill, care, and diligence in effecting the insurance [policy], and any negligence or other breach of duty on his part [that] defeats the insurance [policy that] he undertakes to secure will render him liable to his [insured] for the resulting loss."

Deer *v.* National General Ins. Co.

Id. An agent's duties regarding a policy that the agent has already procured do not categorically end once the policy has been procured. The Appellate Court has recognized that insurance agents have "[an] obligation to seek continuation of an [existing] insurance policy," which includes "the duty to notify the applicant if the insurer declines to continue [to insure] the risk, so the applicant may not be lulled into a feeling of security or put to prejudicial delay in seeking protections elsewhere." (Internal quotation marks omitted.) *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, supra, 109 Conn. App. 566; see, e.g., id. ("[a]n agent or broker cannot sit idly with a cancellation notice or information, but must seasonably inform the insured client thereby giving the client sufficient time to obtain protect[ion] with another insurer" (internal quotation marks omitted));[4] see also, e.g., 12 E. Holmes, Appleman on Insurance (2d Ed. 1999) § 86.6, p. 497.

The dispute here necessarily implicates Trahan's duties regarding the continuation of an existing policy. Century-National's first email instructed Trahan to notify the Deers that, "as a condition of continued coverage," the Deers were required to repair the siding on their house. At that time, Century-National's communications strongly suggested that it would cancel the Deers'

---

[4] The majority's claim that this sentence from *Precision Mechanical Services, Inc.*, is taken out of context results from a mechanical interpretation of the Appellate Court's reasoning. It is true that the court in *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, supra, 109 Conn. App. 566, was considering whether the "broker . . . agreed to seek renewal of a policy," as the majority points out. (Emphasis omitted; internal quotation marks omitted.) Footnote 7 of the majority opinion. But the court did not conclude that no other grounds existed for determining that an insurance agent had an "obligation to seek continuation of an insurance policy," which would include "the duty to notify the applicant if the insurer declines to continue [to insure] the risk . . . ." (Internal quotation marks omitted.) *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, supra, 566. The same duty can arise for other reasons, as I have contended in this dissent.

Deer *v.* National General Ins. Co.

initial policy prior to the policy's end date.[5] The second email stated that, because the Deers had not responded to the prior email, their policy was set to nonrenew, but that it could be renewed if the Deers timely submitted proof that they have fixed the siding issue.[6] Because Trahan knew that Century-National had threatened to cancel coverage on an existing policy and, later, to not automatically renew the policy because of the siding issue, Trahan's duties to the Deers with respect to that policy had not yet ended. Instead, Trahan continued to owe a duty "to exercise reasonable skill, care, and diligence''; *Ursini* v. *Goldman*, supra, 118 Conn. 559; which includes "the duty to notify the [insured] if the insurer declines to continue [to insure] the risk . . . .'' (Internal quotation marks omitted.) *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, supra, 109 Conn. App. 566. I would conclude that Trahan had a duty to notify the Deers about the condition for continuing coverage and the threat of nonrenewal if they did not send Century-National proof of compliance. Accordingly, I would reverse the Appellate Court's judgment upholding the trial court's granting of summary judgment as to Trahan and remand the case for further proceedings because there is a genuine issue of material fact regarding whether Trahan notified the Deers about the inspection results and nonrenewal. See, e.g., *Shoreline Shellfish, LLC* v. *Branford*, 336 Conn. 403, 407, 420, 246 A.3d 470 (2020).

II

In the words of Massachusetts Supreme Judicial Court Justice Oliver Wendell Holmes, later a justice of

[5] Babbitt, Century-National's representative, wrote: "Please discuss the situation with your insured, as repairs are required *as a condition of continued coverage.*'' (Emphasis added.)

[6] Century-National's internal notes confirm that, even if the Deers had paid their premium to renew their policy, the policy would still not renew if the Deers did not send Century-National proof of compliance with the email about the required repairs.

Deer *v.* National General Ins. Co.

the United States Supreme Court, "[i]t is revolting to have no better reason for a rule of law than that so it was laid down [centuries ago] . . . [and] [i]t is still more revolting if the grounds [on] which it was laid down have vanished long since . . . ." O. Holmes, "The Path of the Law," Address at Boston University School of Law (January 8, 1897), in 10 Harv. L. Rev. 457, 469 (1897). Regardless of whether the rule relied on by the majority applies in this case, this court must reexamine our centuries old case law, which has not adapted to changes in the insurance industry and is no longer reflective of modern agent and insured relationships. The majority seems to implicitly reason that the purpose of the general rule involves limiting an insurance agent's liability. Yet, the majority does not cite, and I could not find, any case that articulates the public policy decisions that inform the general rule. The "rule" is the rule because it has always been the rule. The majority certainly does not enlighten us on how or why the "rule" is logical or meritorious in the present. Neither does it provide an explanation of why applying the rule here advances any policy interest.[7] In other words, the majority's adherence to our admittedly long-standing precedent fails to consider the range of policy concerns that we might otherwise examine, including the significant changes in the insurance industry since this rule was first adopted more than 100 years ago. See, e.g., *Raspberry Junction Holding, LLC* v. *Southeastern Connecticut Water Authority*, 340 Conn. 200, 206, 263 A.3d 796 (2021). Just because a legal principle has been long established does not mean that it was rightly decided or that it remains relevant to an evolving industry.

[7] To the extent that the majority reasons that the purpose of the rule is to assign responsibility for notifying an insured of a policy cancellation or nonrenewal to the insurer, I disagree. That may well be the purpose of § 38a-323 (a) (1), which requires insurers to provide notice of nonrenewal to insureds at least sixty days prior to a policy's nonrenewal. But the common-law rule that an insurance agent's duties to an insured end once a policy is procured is focused on the scope of an agent's duties to an insured.

Deer *v.* National General Ins. Co.

One of the "great virtue[s]" of the common law is "its adaptability to the conditions and needs of changing times." *Smith* v. *Brennan*, 31 N.J. 353, 362, 157 A.2d 497 (1960). Little has changed with the common-law rule of insurance agent liability. Yet, the insurance industry, and an insurance agent's role in it, has significantly evolved over the last century. See, e.g., *Sobotor* v. *Prudential Property & Casualty Ins. Co.*, 200 N.J. Super. 333, 341, 491 A.2d 737 (App. Div. 1984) (emphasizing "the increasing complexity of the insurance industry"). Ordinarily, this court would consider "the normal expectations of the participants in the activity under review" when determining whether a person or entity has a duty in a particular situation. (Internal quotation marks omitted.) *Raspberry Junction Holding, LLC* v. *Southeastern Connecticut Water Authority*, supra, 340 Conn. 206; see also, e.g., *Cheshire Brass Co.* v. *Wilson*, supra, 86 Conn. 557 (noting that broker may have duty to insured after procurement of insurance policy if "course of business between the parties . . . warrant[s] the inference" that ongoing duty exists). In this case, interpreting the record in a light most favorable to the Deers, it appears that the parties expected that Trahan would notify the Deers of the inspection results and nonrenewal. Trahan claims that its employees called multiple times to notify the Deers of this information. Perry's email response to Century-National, following the fire at the Deers' residence, indicates that she believed that Trahan erred in not forwarding that information and, therefore, that Trahan would be expected to notify the Deers. The Deers' expert witness also testified that a reasonable insurance agent would notify an insured when an insurer has threatened to cancel or nonrenew an existing insurance policy, especially if the agent receives an email from the insurer with inspection results tied to that policy. The employees at Century-National also appeared to believe that Trahan

Deer *v.* National General Ins. Co.

should have provided that information to the Deers. And it is without question that the Deers reasonably expected that Trahan would pass along that information.

Although the parties' expectations are only one policy factor that this court considers in determining whether a duty exists in a particular circumstance; see, e.g., *Raspberry Junction Holding, LLC* v. *Southeastern Connecticut Water Authority*, supra, 340 Conn. 206– 207; those expectations are critical because they underscore the gap between ordinary business practices and the law. In this case, the majority's rote application of the general rule also highlights that, in this instance, the common law has not adapted to changing conditions. Not only has the common law not evolved to account for changes in the insurance industry, but it is also inconsistent with the legislature's treatment of insurance agents as professionals. After all, Connecticut heavily regulates and licenses insurance agents. See General Statutes § 38a-702a et seq. And the majority's application of the rule does not reflect the fact that national associations of insurance agents consider their agents as professionals and strive for others to view them as professionals. See, e.g., National Federation of Insurance Agents, Elevating the Insurance Profession, available at https://nationalfia.org/elevating-the-insurance-profession/ (last visited September 2, 2025). Instead, the majority reproduces the view that insurance agents are mere salespersons, passive conduits between insurers and insureds, rather than crucial actors within the insurance system, on whom Connecticut residents depend on to provide professional services. See, e.g., D. Sakall, Note, "Can the Public Really Count on Insurance Agents To Advise Them? A Critique of the 'Special Circumstances' Test," 42 Ariz. L. Rev. 991, 1011–12 (2000) (suggesting that Connecticut is one of few states that has case law allowing for possibility that insurance agents can be viewed as professionals rather than mere sales-

Deer *v.* National General Ins. Co.

persons). Insurance agents are professionals in their field. The law should reflect that by allowing for the possibility that an insurance agent has a duty to act as a reasonable insurance agent would and to inform insureds of a notice of a policy cancellation or non-renewal.

Finally, I note that the rule that the duties an insurance agent owes to an insured end once the policy is procured derives from the law of agency. See, e.g., *Cheshire Brass Co.* v. *Wilson*, supra, 86 Conn. 557 (explaining "general rule" that insurance broker's role as their client's agent ends once broker successfully procures client's requested policy). Traditionally, the law of agency has taken a more bright-line approach in determining when an agency relationship ends. See, e.g., 1 Restatement, Agency § 106, p. 273 (1933). But modern agency law increasingly involves a circumstantial, fact-driven analysis in determining when an agency relationship terminates and the scope of that relationship. See, e.g., 2 Restatement (Third), Agency, § 8.11, p. 369 (2006). Consistent with this circumstantial approach, § 8.11 of the Restatement (Third) of Agency also suggests that, in some circumstances, the duties an agent owes a principal, including an agent's duty to provide information to their principal, might survive after the formal agency relationship ends. See, e.g., id., § 8.11, comment (c), p. 376; id., § 8.11, reporter's note to comment (c), p. 384, citing *In re Cooper Mfg. Corp.*, 131 F. Supp. 2d 1230, 1237 (N.D. Okla. 2001); see also, e.g., 2 Restatement (Third), supra, § 8.11, p. 369 ("[a]n agent has a duty to use reasonable effort to provide the principal with facts that the agent knows . . . when . . . subject to any manifestation by the principal, the agent knows or has reason to know that the principal would wish to have the facts or the facts are material to the agent's duties to the principal"). Thus, the standard regarding an insurance agent's liability to their insured,

as it exists today, is premised on outdated agency principles. This causes me greater concern for this court's continued adherence to a rule that is no longer justified in practice or by underlying legal principles.

For the foregoing reasons, I respectfully dissent.

_____